Lindsey M. SCOTT, Plaintiff-Appellant,

v.

Larry DIXON, et al., Defendants-Appellees.

No. 82–8376.

United States Court of Appeals, Eleventh Circuit.

Dec. 15, 1983.

Rehearing and Rehearing En Banc March 23, 1984.

**1544**

George Rountree, Brunswick, Ga., for plaintiff-appellant.

Edward E. Boshears, Richard A. Brown, Jr., Terry K. Floyd, Brunswick, Ga., for defendants-appellees.

Before HATCHETT and CLARK, Circuit Judges, and SCOTT *, District Judge.

CLARK, Circuit Judge:

In January 1980, defendant Larry Dixon sold a truck to plaintiff Lindsey Scott on credit. A dispute arose regarding the payment agreement. Plaintiff alleges that under the purchase agreement he was to paint Dixon's house in lieu of a $700 downpayment, trade in his old truck for credit of $600, and finance the $2,800 balance pursuant to a retail installment contract. Plaintiff asserts that Dixon refused to allow him to paint the house but all installment payments were timely tendered. Dixon denies that he consented to permit Scott to work off part of the payment and that the payments were otherwise timely. The district court found plaintiff's version convincing, including that Scott gave Dixon a $700 check on the provision it not be cashed since sufficient funds were not available. The lower court found that Dixon wanted to repossess the truck on the allegation of improper insurance coverage.

Dixon, at the time Chairman of the Board of Commissioners, testified that on August 6, 1980 he sought legal advice from defendant Floyd, Clerk of the State Court of Glynn County, Georgia, on how to obtain the truck or payment therefor. Dixon swore out an affidavit for the issuance of a warrant for Scott's arrest, charging plaintiff with "endangering a security interest" in violation of Ga.Code Ann. § 26–1707 (1977).[1] Defendant Floyd issued the criminal warrant to Dixon. Floyd directed Dixon that he should take the warrant to the police for enforcement.[2]

Dixon kept the warrant in his possession for five months during which time he threatened plaintiff with legal action if the latter failed to pay for or return the truck. On the evening of January 19, 1981, Dixon, who was no longer Commissioner, "ran into" two police officers (defendants Kelley and Latham) at a restaurant, inquired into the continued viability of the warrant, and requested that they accompany him to plaintiff's home in the event of violence.

Arriving at plaintiff's home, Dixon approached Scott and requested the truck keys. The officers remained in the police car. When plaintiff refused to accede to Dixon's wishes, Dixon left in his own car and the officers arrested Scott. Subsequent to his incarceration, plaintiff was released on bond and the charge ultimately dismissed.[3]

Alleging a deprivation of liberty and property without due process of law in violation of 42 U.S.C.A. § 1983 (1981), Scott sued Dixon, Floyd, Kelley, Latham, and American Fire and Casualty Company (AFCC). Scott also alleged three pendent state law claims.[4] Defendants sought sum-

---

* Honorable Charles R. Scott, U.S. District Judge for the Middle District of Florida, was a member of the panel that heard oral arguments but due to his death on May 12, 1983 did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d).

1. That section is presently codified at Off.Code Ga.Ann. § 16–9–51 (1982).

2. Floyd issued the warrant pursuant to Ga. Code Ann. § 27–102 (1978). That section provided in pertinent part:

   Any judge of a superior, city, or county court, or justice of the peace, or any munici-

pal officer clothed by law with the powers of a justice of the peace, may issue his warrant for the arrest of any offender against the penal laws, based either on his own knowledge or the information of others given to him under oath. . . .

Ga.Code Ann. § 27–102 (1978). This section was amended in 1983 and recodified at Off. Code Ga.Ann. § 17–4–40 (Supp.1983).

3. Apparently, no evidence existed that Scott had committed the charged offense.

4. The state law claims were for false imprisonment, malicious arrest, and malicious prosecution. Record at 17–21.

mary judgment on the ground that, among other things, plaintiff's claim fell outside the jurisdictional scope of section 1983.[5] Defendant AFCC also filed a motion for judgment on the pleadings.

Subsequent to oral argument, the district court granted the summary judgment motions of Dixon, Floyd, Kelley, and Latham. The district court found no section 1983 claim in that Dixon secured the warrant as a private citizen, Floyd enjoyed absolute immunity in exercising a discretionary judicial function and Kelley and Latham enjoyed qualified immunity in carrying out their duties in good faith. The court also granted AFCC's motion for judgment on the pleadings, finding that AFCC bonded only the County Board of Commissioners and not Floyd. The motions of Alma and Mabel Dixon were overruled and denied, but based on the prior rulings, the district court declined to exercise ancillary jurisdiction over the fraudulent conveyance claim and dismissed it sua sponte. The lower court also dismissed the pendent state claims. After an independent review of the evidence viewed in the light most favorable to plaintiff, and upon application of the law governing these facts, we find the district court order granting summary judgments erroneous with respect to Dixon, Latham and Kelley. We reverse and remand.

*Dixon*

A claim grounded in section 1983 has as a prerequisite a finding of state action. Plaintiff must also show causal deprivation without due process of a right secured him by the federal laws. *Brown v. Miller,* 631 F.2d 408, 410 (5th Cir.1980). Plaintiff's complaint alleges deprivation of both a lib-

erty and property right. At the summary judgment hearing, Dixon's attorney "assume[d] that [Scott] was deprived of due process." Record Vol. 5 at 7. Likewise, the district court stated that "assuming a deprivation, it did not occur 'under color of state law.'" Record at 629. We therefore look only to the question of state action.

In the instant case, the district court found that Dixon "obtained the warrant as a private citizen" and thus did not act under color of state law. Both *Lugar v. Edmondson Oil Co., Inc.,*[6] 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), and *Morrison v. Washington County, Alabama,*[7] 700 F.2d 678, 683–84 (11th Cir.1983), were decided since the district court considered this case. These cases make clear the proposition that a private party acting pursuant to state law or in conjunction with state officials may, in certain circumstances, incur liability under section 1983. The conduct causing deprivation of the federal right must be "fairly attributable to the state." *Lugar,* 457 U.S. at 937, 102 S.Ct. at 2754, 73 L.Ed.2d at 495. This requirement is satisfied by a showing that the deprivation resulted from "the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor [either] because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state." *Id.*

---

**5.** The motions and supporting materials of the original defendants are found in the Record at 307–45, 359–71, 372–80.

**6.** The president and sole stockholder of Edmondson Oil petitioned pursuant to state law for a prejudgment attachment of Lugar's property. The petition simply alleged in conclusory terms that Lugar might dispose of his property in order to defeat creditors. A state trial judge later dismissed the attachment because Edmondson Oil had failed to carry the burden of establishing the grounds for attachment. *Lugar v. Edmondson Oil Co., Inc.,* 639 F.2d 1058 (4th Cir.1981). In the present case, a citizen

may also have made private use of a state procedure with the help of state officials.

**7.** A doctor at the Washington County hospital determined that a patient suffering from delirium tremens, a severe form of alcohol withdrawal, should not remain at the hospital. He requested that a staff member get the sheriff to come and remove the patient. The patient was then taken to the county jail where he later died of alcohol withdrawal. The court found that the doctor, although a private citizen, had "acted together with" and "obtained significant aid from state officials." 700 F.2d at 684.

In the instant case, the state of Georgia provided a statutory scheme authorizing criminal prosecution of a person who endangers a security interest. Ga.Code Ann. § 26–1707. A state official issued and state officials executed a criminal warrant pursuant to the statute. Dixon acted pursuant to a procedural scheme which permitted through its abuse the arrest of Scott for not paying a debt. Dixon clearly acted in conjunction with and obtained significant aid from state officials. The evidence permits a conclusion that Dixon conspired with Floyd to obtain the warrant, acted in bad faith in securing it, and used his prior position to procure its execution. The appellant in response to the motion for summary judgment asserted that Dixon and others knowingly misused state procedure in violation of Scott's civil rights and that the procedure itself was invalid. Whether Dixon was acting as Commissioner or as a private citizen, the district court erred in finding an absence of genuine issues of material fact in light of *Lugar* and *Morrison, supra.* On the record before us in light of the controversy in the evidence, we cannot say as a matter of law that Dixon's actions were completely outside the purview of section 1983. We emphasize that we in no way intimate that every affiant to a criminal warrant engages in state action of a constitutional dimension. *Accord Lugar v. Edmondson Oil Co.,* 457 U.S. at 942, n. 23, 102 S.Ct. at 2757 n. 23. Nor do we suggest that Dixon is or is not liable under section 1983. We merely find that summary judgment was improvidently granted.

*Floyd*

In order to determine whether absolute immunity extends to Floyd, it is important to consider the "reasons underlying the creation of the immunity shield."

*McCray v. Maryland,* 456 F.2d 1, 3 (4th Cir.1972). The reasons for extending judicial immunity are to protect those officials with discretionary power similar to that exercised by a judge and thereby to ensure courageous exercise of that discretionary power. *Id.* The question which must be answered with regard to the extension of absolute judicial immunity, therefore, is whether the act performed by the officer is discretionary or ministerial in nature.

In this case, the district court correctly found that State Court Clerk Floyd exercises a discretion normally reserved to the judiciary. Floyd is empowered by the 1945 Acts p. 1095 § 4 to issue criminal warrants.[8] In deciding whether to issue such warrants, he must determine the law applicable to the complaint being lodged by the affiant and whether or not probable cause exists. Since Floyd performs a function normally handled by a judge, he falls within this circuit's narrow extension of absolute judicial immunity to court clerks.[9]

If Floyd were a judge, his absolute immunity would be assured despite the assertion by the appellant that Dixon and Floyd conspired with one another or reached an understanding about the issuance of a warrant to be used as a lever to pry possession of the truck from the appellant. The Supreme Court considered the issue of judicial immunity in *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). *Stump* provides that a judge will be shielded from liability if he has not acted in the "clear absence of all jurisdiction," 435 U.S. at 357, 98 S.Ct. at 1105, 55 L.Ed.2d at 339 (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872)), and if his act is a judicial one. 435 U.S. at 360–62, 98 S.Ct. at 1106–07, 55 L.Ed.2d at 341–42. *Stump* also states that

---

8. The 1945 Act provides:
    Section 4. Said Act is further amended by adding at the end of Section 10 and as a part thereof the following language:
    "In addition to the duties enumerated, the Clerk of the City Court of Brunswick and his deputies shall be authorized and empowered to administer all oaths in connection with the issuance of attachments, garnishments, dispossessory and distress warrants and other

mense process, and other types of warrants and writs, both civil and criminal, which the Judge of said court can administer, and to issue in the name of the Judge of said court all such warrants and writs."

9. *Williams v. Wood,* 612 F.2d 982, 985 (5th Cir.1980); *Tarter v. Hury,* 646 F.2d 1010 (5th Cir. Unit A 1981).

if judicial acts are done within his subject matter jurisdiction he will not be liable even if he acts in error, maliciously or in excess of his authority. 435 U.S. at 357, 98 S.Ct. at 1105, 55 L.Ed.2d at 339.

Since Floyd issued the warrant against Scott under the authority granted by Georgia law, he does not appear to have acted in "the clear absence of all jurisdiction." The factors which determine whether an act is judicial "relate to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." 435 U.S. at 362, 98 S.Ct. at 1107, 55 L.Ed.2d at 342. Applying that test to the present case, it appears that there was a judicial act in this case. The issuance of a warrant would be a function normally performed by a judge. *See Brewer v. Blackwell,* 692 F.2d 387, 396 (5th Cir.1982); *Keeton v. Guedry,* 544 F.2d 199, 200 (5th Cir.1976). By going to the clerk's office to swear out the warrant, Dixon was dealing with Floyd in his "judicial" capacity.

Floyd, therefore, is immune even if he did conspire with Dixon by issuing a criminal arrest warrant to collect a debt. A finding of immunity for Floyd, however, is not determinative of Dixon's possible liability. As the Supreme Court decided in *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185, 189 (1980), the dismissal on immunity grounds of a § 1983 action against a judge does not require dismissal as to the private parties involved. In *Dennis,* the judge had allegedly been bribed by one of the parties to the case to issue an injunction. As the Court noted, "[u]nder these allegations, the private parties conspiring with the judge were acting under color of state law; and it is of no consequence in this respect that the judge himself is immune from damages liability." 449 U.S. at 28, 101 S.Ct. at 186, 66 L.Ed.2d at 190.

*Kelley and Latham*

Police officers do not enjoy absolute immunity from civil liability for § 1983 violations. Instead, they acquire a qualified immunity only for the good faith performance of their duties. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Since the Supreme Court decision in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the standard for gauging the good faith of government officials, including law enforcement officials, has been an objective one. Officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410.

The district court based its finding of good faith on the part of Officers Kelley and Latham on the appellant's failure to rebut the testimony of the officers that they were simply carrying out their duties, or to produce evidence which would support an inference of bad faith. In reaching that decision, however, the district court overlooked a genuine issue of material fact regarding the manner in which the arrest warrant was executed. Officers Kelley and Latham did testify that they simply executed a facially valid arrest warrant given them by Dixon. Both testified that they were in possession of the warrant from the time Dixon approached them about executing it until Scott was delivered to the sheriff's office.

To controvert this, the appellant submits evidence inferring that the police accompanied Dixon to the Scott home in an effort to aid him in reclaiming the truck. Both the appellant and his wife testified in deposition that Dixon showed them the warrant and threatened to have Scott arrested if he did not turn over the keys. Only after the Scotts refused to comply did Dixon leave their home and turn over the warrant to the police waiting at the end of the driveway. Dixon also testified that he had the warrant in his possession when he spoke with the Scotts.

If Officers Kelley and Latham allowed Dixon to use the criminal warrant to try to collect a debt before they effected the appellant's arrest, a question has been raised as to their good faith. The Tenth

Circuit in *Lessman v. McCormick,* 591 F.2d 605, 611 (1979), found that allegations that the police arrested a woman on a warrant for overtime parking in order to aid a bank to collect its debt were sufficient to state a cause of action for deprivation of liberty under color of state law. The appellant in the present case has not only alleged but also testified to a similar deprivation. As the Court in *Harlow, supra,* noted: "By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct ... Where an official *could be expected to know* that certain conduct would violate statutory or constitutional rights he should be made to hesitate ..." 457 U.S. at 819, 102 S.Ct. at 2739, 73 L.Ed.2d at 411 (emphasis added). Because the district court erred in finding an absence of a genuine issue of material fact with regard to the entitlement of Kelley and Latham to good faith immunity for their actions, we hold that summary judgment with respect to them was improperly granted.

AFFIRMED IN PART, REVERSED IN PART and REMANDED.