**Jeffrey BALL**

v.

**A.D. TONG and S.L. Merrifield.**

**Civ. No. 187-cv-269-ODE.**

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 21, 1988.

---

Reid George Kennedy, Kennedy & Kennedy, Marietta, Ga., for plaintiff.

Jerry Lovvorn Gentry, Sams, Blover & Gentry, Marietta, Ga., Harold Steven Abernathy, Conrad & Abernathy, Canton, Ga., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This action under 42 U.S.C. § 1983 is before the court for findings of fact and conclusions of law following a non jury trial on January 14–15, 1988. After considering the evidence and arguments of counsel, the court hereby finds and concludes as follows:

Defendant S.L. Merrifield, is a Cobb County police officer. At around midnight on the evening of February 9, 1986, he observed a pickup truck in the parking lot of the Chattahoochee Nature Center at the Johnson Ferry Landing by the Chattahoochee River. He saw two men standing in front of the truck. Defendant Merrifield, who was generally patrolling the area, decided to stop and investigate. As he pulled into the deserted parking lot, the two men got back in the truck and began to pull away. Merrifield turned on his flashing light; the truck stopped.

Merrifield approached the driver's side of the vehicle and asked the driver, Ronald Knapp, what was going on. Knapp replied he had stopped to urinate. Merrifield smelled alcohol and asked to see Knapp's driver's license. Knapp replied that he had lost his license. This was untrue; Knapp's license had expired a couple of years before that and he had no current license. The passenger, Plaintiff Jeffrey Ball, stated that he had a license; he handed it over to Merrifield who examined it.

Merrifield asked Knapp to get out of the truck, intending to administer some sobriety field tests such as saying the ABC's, walking in a straight line, etc. As Knapp climbed out of the truck, Merrifield observed an elongated object protruding out of a pocket on the truck door; he thought it was a wooden stick. Apparently, it was a metal tool of some type.

The evidence showed without dispute that Knapp and Ball had been out drinking at a T.J. Applebee's restaurant that evening. They had arrived at the restaurant at about 7:30 p.m. and left somewhere between 10:30 and 11:30 p.m. While they were there, they each consumed a quantity of beer and shared a plate of nachos with cheese. Then they picked up some items at a convenience store. Apparently they were enroute to Mr. Ball's home when they stopped at the Chattahoochee Nature Center parking lot. Knapp was driving his pickup truck. He testified he stopped there to urinate.

Merrifield told Knapp to follow him back to the patrol car which was parked some 6 feet behind the truck. His idea was to separate Knapp from the object on the truck door. He observed that Knapp was unsteady on his feet. As Knapp was beginning to say his ABC's beside the parked car, Plaintiff Jeffrey Ball exited the truck and approached Merrifield and Knapp.

All of the individuals involved are white males, between 25 and 30 years of age.

Mr. Knapp is 5 feet, 10 inches tall and weighed 150 pounds. Mr. Ball is 5 feet, 10 inches tall and weighed 175 pounds. Officer Merrifield is 5 feet, 5 inches tall and weighed 135 pounds. On February 9, 1986, he had been a police officer for sixteen months.

Mr. Ball was agitated as he approached Merrifield and Knapp. He kept saying, "What's going on?" and "You can't do this, this is America." He uttered some obscenities. Like Knapp, he appeared to be and in fact was intoxicated. Merrifield directed Ball to go back and get in the truck. Ball did not immediately do that, but rather again demanded an explanation for what was going on. As Merrifield repeated his demand that Ball return to the truck, Ball said, "This is America, I don't have to do a damn thing." Referring to Merrifield, Ball said to Knapp, "He's just trying to start some shit."

At this point, Knapp spoke up and told Ball he should return to the truck. Knapp also volunteered to Merrifield that he really was too drunk to drive, and suggested that the whole episode could be resolved if Ball could be allowed to drive them home. Ball returned to the truck as Knapp suggested; he got in the driver's seat.

At this point, Merrifield decided that he probably would arrest Knapp for DUI. Thinking that Ball might seek to interfere with the arrest, he called in and asked for a backup. His calls were heard by Defendant A.D. Tong, Merrifield's partner who also was patrolling in the area. The calls indicated that Merrifield was investigating a suspicious vehicle and that there was a disorderly person in a truck. Tong, who was about five miles away at that point, started toward the Chattahoochee Nature Center. While en route, Tong heard a code transmission from Merrifield indicating "officer needs assistance immediately." He also heard Merrifield asking how long it would be before his backup arrived. Merrifield made these further calls because Ball continued to call out from the truck, "I'm

the driver, I'm the driver." Merrifield felt he had to stall the arrest of Knapp until his backup arrived.

Officer Tong is also a white male, about the same age as the others, is 5 feet, 8 inches tall, and weighed 165 pounds. He had been a police officer for three years.

When Officer Tong reached the scene, he parked his patrol car roughly perpendicular to the truck and turned on his bright lights so they illuminated the driver's side where Ball was sitting. The door of the truck was open, and Tong observed the elongated object in the pocket of the door. Moving across the grassy median which separated Tong's patrol car from the truck, he directed Ball to step out and walk back to the patrol car. Tong had his police baton or nightstick in one hand behind his back. Ball got out of the truck; Tong observed that he was unsteady, smelled of alcohol, and probably intoxicated. Ball stated indignantly, "I wasn't doing anything, I was just drinking beer." Tong held Ball's right bicep with his free hand to guide him. When they reached the patrol car, Tong told Ball to put his hands on the car so he could pat him down. Ball complied, but before Tong could pat him down, he pulled his hands away from the side of the vehicle. Tong commanded him to put his hands back and forced Ball's hands onto the car. Ball immediately turned around facing Tong, with his hands raised. Evidently, this placed the two men practically nose-to-nose, as Tong was still in the process of doing the patdown.

Determining what happened from that point forward requires resolution of conflicting testimony. Mr. Ball's version is that the physical confrontation between him and Officer Tong began when Tong grabbed him in a choke hold with his nightstick and forced him to the ground. According to Ball, Tong then proceeded to strike the side of his face and head with something hard, which Ball could not see,[1] and to push Ball's face into the ground while holding his hair at the back of his

---

1. Ball also testified that this occurred as soon as he stepped out of the truck, not after walking over to the patrol car. Ball did not recall any patdown. These were clearly errors in Mr. Ball's recollection.

head. Dr. Joseph Burton, a forensic pathologist, testified that more likely than not the two inch-long lacerations on the right hand side of Ball's head and face were caused by blows from a police baton or nightstick. Ball's right zygomatic arch, or cheekbone, was fractured directly underneath the one-inch long laceration on his face.

Officer Tong, on the other hand, testified he had placed the nightstick back in its holder before starting to pat Ball down. He testified that when Ball turned around, Ball pushed him and Tong then tried to grab Ball to control him. Tong states that Ball got him around his neck in a choke hold and tried to get his revolver. Tong testified Ball was strong and that it was only with Merrifield's help that he finally got the cuffs on Ball. Tong testified that he and Ball fought for a long time, and that at times Tong felt that Ball was going to win the fight. Tong stated that he never struck Ball with his nightstick. However, when he finally got the handcuffs on Ball, he found his nightstick on the ground under Ball's neck. He opined that Ball probably grabbed the stick out of its holder during the scuffle.

It is clear that while Tong and Ball were on the ground, Knapp ran over and began kicking Officer Merrifield who had gone to help Tong. Merrifield came after Knapp, who tried to run away but and was caught. After Knapp was handcuffed, Tong saw Knapp, whose hands were cuffed behind his back, fumbling with his side pocket and then throwing something to the ground. After the melee had ended, Officer Merrifield recovered a small plastic bag containing less than a gram of white powder; lab analysis showed it was cocaine. Knapp denied that he had had any cocaine with him, but his testimony is discredited.

Tong and Merrifield together were able to get handcuffs on Ball by pinning him to the ground face down, with the two officers sitting on top of Ball. Before this occurred, Tong and Ball had been fighting and rolling around both on the asphalt pavement of the parking lot, on the grassy median in the middle of the parking lot,

and over the wooden railroad ties which formed the circumference around the grassy median.

The key element in analyzing Ball's claim of excessive force against Officers Tong and Merrifield is the question of how the fight began. If as Ball testified, Tong grabbed him in a choke hold with his nightstick the minute he stepped out of the truck, for no reason whatsoever, then even though Ball subsequently fought back his claim of excessive force would be valid. On the other hand, if the considerable physical force Tong used against Ball was a justifiable response to Ball's own actions, then Ball would not be entitled to prevail. In either case, it is not necessary for the court to determine whether the linear lacerations and fracture on Ball's face and head were caused by contact with Tong's nightstick or instead by forcible contact with the linear edge of the railroad cross ties which Tong and Ball were on at one point during their struggle.

The court does not find either Ball's or Tong's version of what happened initially totally convincing. First of all, Ball was clearly drunk. His impression that as he stepped out of the truck, he was locked in a choke hold, knocked to the ground, and immediately beaten practically senseless is clearly at variance with the time span and sequence of events established by the testimony of both Tong and Merrifield. Merrifield, who did not purport to observe the entire sequence of events as between Tong and Ball, did credibly verify that the struggle between Ball and Tong lasted a considerable period of time and began when Ball turned around during the patdown at the patrol car, not beside the truck. Tong had called for additional backup when the fight with Ball started; no vehicles were in the area. The third police car arrived about 15 minutes after Tong's call, just as Tong and Merrifield were getting cuffs on Ball. Mr. Ball's failure to recall the proper time span or the initial sequence of events renders his overall recollection somewhat unreliable.

At the same time, it is not probable that Officer Tong placed his nightstick back in the holder before he began to pat Ball

down. Given the relative physical equality of Tong and Ball, Tong's feisty demeanor, the deserted location and the time of night, Tong was probably proceeding cautiously. Probably he placed the nightstick under one armpit when he began the patdown. Therefore, when Mr. Ball turned around suddenly and faced Tong, Tong could either have reflexively put the baton back in his hand or it could have dropped to the ground.

In either event, the court finds Officer Tong legitimately interpreted Ball's move as a threatening one, and raised his own hands in self defense. Any use he made of his nightstick was not a calculated attempt to injure Ball; it was an instinctive reaction to protect himself and to gain control of Ball. Ball probably did push Tong when he turned around; his hands were raised and the two men were standing very close together.

■■■ Ball and Knapp were arrested. Ball was charged with obstructing an officer; he was acquitted at his trial in June, 1986. Then he filed this action. Knapp was charged with DUI, a Georgia Controlled Substance Act violation, and obstructing an officer. Knapp has not been tried.

In *Shillingford v. Holmes*, 634 F.2d. 263 (5th Cir.1981), the Fifth Circuit held:

> If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excessive zeal so that it amounted to an abuse of official power that shocked the conscience, it should be addressed under section 1983.

Applying this test, the court finds and concludes that Defendants are entitled to prevail. The evidence totally failed to show that Defendant Merrifield took any measures against Ball which were disproportionate to the circumstances. Although the evidence as to Defendant Tong's actions is less clear, it fails to preponderate in Plaintiff's favor on the issue of who was at fault for initiating the physical confrontation, and on the question of whether Defendant Tong's reaction was so excessive as to constitute the basis for liability under § 1983. Viewing the evidence most liberally to the Plaintiff, Tong's actions could only be construed as an overreaction to a legitimately threatening situation. It may be that if Tong had reasoned with Ball when he turned around and pushed him, instead of striking back, that the entire confrontation could have been avoided. However, taking all of the circumstances into account, Tong's interpretation of Ball's intention was within the range of objective reasonableness. For that reason too, he is entitled to judgment in his favor. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Scott v. Dixon*, 720 F.2d 1542 (11th Cir.1983); *Acoff v. Abston*, 762 F.2d 1543 (11th Cir.1985).

Accordingly, the Clerk is DIRECTED to enter judgment in favor of the Defendants.