Jimmy BRITT, Plaintiff,

v.

WHITEHALL INCOME FUND '86, a California Limited Partnership, and Delores Fraichard, Defendants.

Civ. A. No. 91–149–ATH(DF).

United States District Court,
M.D. Georgia,
Athens Division.

July 29, 1993.

Julian Hue Henry, Athens, GA, for plaintiff Jimmy Britt.

Edward Davison Burch, J. Ralph Beaird, Athens, GA, for defendants Whitehall Income Fund '86, A. Cal. Ltd. Partnership, Delores Fraichard.

FITZPATRICK, Chief Judge.

Defendants' motion for summary judgment is presently pending before this Court. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For purposes of a summary judgment motion, the non-movant's version of the facts must be accepted, and all disputed matters must be resolved in favor of the non-movant. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Summary judgment is mandated, however, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## BACKGROUND

Defendant Whitehall Income Fund '86 ("Whitehall") owns 399 storage warehouses known as Mini Mall Storage located in Bogart, Georgia. Defendant Delores Fraichard is the resident manager of Mini Mall Storage. (Affidavit of Delores Fraichard, ¶ 1, Exhibit "A" to Defendants' Motion for Summary Judgment.) Access to Mini Mall is over a fifty foot driveway easement, which runs between the Goodyear and Kawasaki stores. The Kawasaki store is owned and operated by Plaintiff Jimmy Britt. A chain link fence with access through computer controlled gates located on the fifty foot driveway easement provides security for Mini Mall. The exit gate is located on the easement adjacent to the Kawasaki store and is operated by sensors located on the driveway pavement. (Fraichard Affidavit, ¶ 2.)

On September 27, 1991, Plaintiff Britt filed Civil Action Number SU–91–CV–2134 against Whitehall in the Superior Court of Athens–Clarke County, Georgia. In this action Britt sought to enjoin the maintenance of the fence and gate across his property, claiming that Whitehall Income Fund '86 had constructed this fence and gate on the property without an easement. Britt sought the

removal of the fence and gate.[1] (Exhibit "A" to Affidavit of Gene Mac Winburn, Exhibit "B" to Defendants' Motion for Summary Judgment.)

On or about 10:00 a.m. on November 21, 1991, a gentleman named Mike called Ms. Fraichard on behalf of Mr. Britt to complain about the exit gate. At approximately the same time Ms. Fraichard looked into the camera monitor in her office and saw that Mr. Britt's vehicle was parked over the sensor located on the easement, which operates the exit gate. The particular placement of the vehicle kept the gate open thereby violating the security it provided. Ms. Fraichard asked Mr. Britt to remove his vehicle but he refused. At 12:37 p.m. on November 21, 1991, Ms. Fraichard hand delivered a letter to David Stern at Plaintiff's Kawasaki store. The letter asked Plaintiff to move his vehicle because it was interfering with Whitehall's possession and use of its property. Ms. Fraichard also mailed Mr. Britt a copy of the letter by certified mail. (Fraichard Affidavit, ¶¶ 3, 4.)

Ms. Fraichard called a police officer in her efforts to get Mr. Britt to move his vehicle. The officer talked to Plaintiff but was unable to persuade Plaintiff to move his car. (Fraichard Affidavit, ¶ 6.) Later the same afternoon, Ms. Fraichard returned to the Kawasaki store to deliver a letter from Gene Mac Winburn, Whitehall's attorney, to Mr. Britt. The letter requested Plaintiff's presence in the Magistrate Court of Athens–Clarke County, Georgia at 10:30 a.m. on Friday, November 22, 1991, because a request for the issuance of an arrest warrant was to be brought before Magistrate Judge Coleman. (Fraichard Affidavit, ¶ 5.)

Although his attorney was present as an observer, Plaintiff did not appear at the November 22, 1991, hearing Magistrate Court Judge Coleman, after reviewing Ms. Fraichard's affidavit and hearing her sworn testimony about Plaintiff's interference with Whitehall's property rights, found sufficient cause to issue a warrant under O.C.G.A. § 17-6-90.[2] (Affidavit of Judge J. Michael Coleman, ¶ 6, Exhibit "C" to Defendants' Motion for Summary Judgment.) Judge Coleman set bond at $1,500.00 and imposed the conditions that Britt was not to contact the complainants except through counsel pending the hearing the next week and that he would neither create nor allow impingement on Whitehall's easement in any manner. (Exhibit "A" to Coleman Affidavit.)

On the night of November 22, 1991, Plaintiff turned himself in to Sergeant Fulghum at the Clarke County Courthouse pursuant to the arrest warrant signed by Judge Coleman. After being advised that it would be necessary for him to go to the Clarke County Jail for the arrest to be processed properly, Plaintiff drove himself to the jail where Sergeant Fulghum completed the arrest booking report from 8:55 to 9:10 p.m. Plaintiff was never handcuffed or placed in a squad car.

---

1. On August 24, 1992, Superior Court Judge Lawton Stephens denied Britt's prayer for an injunction and in doing so confirmed that Whitehall held title to a fifty foot driveway easement, which ran between the Goodyear and Kawasaki stores and on which Whitehall had constructed a fence and security gates. (Exhibit "B" to Winburn Affidavit.)

2. The statute provides:
 (a) Any judicial officer authorized to hold a court of inquiry may, upon information of others under oath or upon his motion, issue a warrant against any person in the county whose conduct is such as to justify the belief that the safety of any one or more persons in the county or the peace or property of the same is in danger of being injured or disturbed thereby. Upon the return of the warrant and upon sufficient cause being shown, the court may require from the person a bond with sureties for his good behavior until the next term of the superior court of the county or for a period of 60 days, whichever is greater. Any person against whom a warrant issues must, within 24 hours, be brought the court which issued the warrant or be released on bond by the sheriff, the amount and reasonable conditions of such bond to be set by the court which issued the warrant.
 (b) All bonds posted under this Code section shall be returnable in the court which issued the warrant and shall be amendable in the court's discretion. Within seven days after being released on bond by the sheriff, the person shall be entitled to a hearing before the court which issued the warrant. The court may, on its own motion, require a hearing.
 (c) If it is determined at a hearing that there was not sufficient cause for the warrant to have been issued, the affiant who caused the warrant to be issued shall pay all court costs.

(Affidavit of Sergeant David Fulghum, ¶¶ 6–7, Exhibit "D" to Defendant's Motion for Summary Judgment.) Plaintiff was released from the jail facility at 9:20 p.m. on November 22, 1991. The jail records do not indicate whether Plaintiff was incarcerated for any period of time. Ms. Kathleen Coniker, however, has testified that based on her knowledge of the procedures at the jail, it is highly unlikely that Plaintiff was incarcerated.[3] (Affidavit of Kathleen Coniker.)

The hearing required under O.C.G.A. § 17–6–90 was held on December 2, 1991. All parties were present and represented by counsel. At the conclusion of the hearing Judge Coleman found that no probable cause existed to believe that Plaintiff had committed the offense of criminal trespass but that the standards of O.C.G.A. § 17–6–90 had been met beyond a reasonable doubt and that the bond should be continued with the first condition stricken. (Coleman Affidavit, ¶ 6.)

Plaintiff subsequently filed the instant action alleging that he was deprived of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983. He also asserts state law claims for malicious arrest, false imprisonment and intentional infliction of emotional distress.

## DISCUSSION

### I. 42 U.S.C. § 1983

■ Section 1983 states that "[e]very person who under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured...." 42 U.S.C. § 1983. In order to meet section 1983's "under color of law" requirement, a plaintiff must show that the conduct, which caused the deprivation, was "fairly attributable to the state." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753–54, 73 L.Ed.2d 482 (1982). The fair attribution requirement is satisfied by a showing that the deprivation was the result of "the exercise of some right or privilege created by

the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor ... because he is a state official ... acted together with or obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Id.*

In the instant action the state of Georgia provided a statutory scheme that authorized Defendant Fraichard to seek a warrant for Plaintiff's arrest. Thus, the first requirement for fair attribution is met. The only evidence in this case of state involvement, however, is Fraichard's application to the magistrate for an arrest warrant.

■ In *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), which concerned an action under the New York Uniform Commercial Code, the Supreme Court held that an action by a private party pursuant to that statute, without something more, was not sufficient to justify a characterization of that party as a "state actor." In *Lugar* the Supreme Court commented on *Flagg Brothers* stating:

> [t]he Court suggested that "something more" which would convert the private party into a state actor might vary with the circumstances of the case. This was simply a recognition that the Court has articulated a number of different factors or tests in different contexts; e.g. the "public function" test ...; the "nexus" test ...; and in the case of prejudgment attachments a joint action test.

*Lugar,* 457 U.S. at 939, 102 S.Ct. at 2755. The Eleventh Circuit has said that the "something more" that is required for state action must be sufficient to bring the state in as a full culpable co-perpetrator such as an allegation of a conspiracy between a state officer and a private party. *Cobb v. Georgia Power Co.,* 757 F.2d 1248 (11th Cir.1985). The "something more" could also be bad faith, improper purpose or the unconstitutionality of the remedy sought. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1790); *Motes v. Myers,* 810

---

3. Plaintiff did not submit an affidavit stating that he was incarcerated on November 22, 1991.

F.2d 1055 (11th Cir.1987); *Scott v. Dixon,* 720 F.2d 1542 (11th Cir.1983), *cert. denied,* 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984).

In *Scott* the Eleventh Circuit reversed the trial court's grant of summary judgment on the issue of state action because there was evidence that the private individual and the clerk of court conspired to have the plaintiff arrested. The circuit court cautioned, however, that "we in no way intimate that every affiant to a criminal warrant engages in state action of a constitutional dimension." *Scott v. Dixon,* 720 F.2d 1542, 1546 (11th Cir.1983), *see also Williams v. Luling,* 802 F.Supp. 1518, 1528 (W.D.Tex.1992) (*citing Dennis v. Sparks,* 449 U.S. 24, 28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980)) ("[m]erely bringing a complaint, or a police officer's reliance on that complaint ... is not sufficient to make the private individual a 'joint actor' or coconspirator with the State officials.")

The Court notes that the record is devoid of any evidence of conspiracy between Ms. Fraichard and state officials in contrast to the evidence in *Scott,* which permitted the plaintiff to survive summary judgment. Moreover, Plaintiff eschews allegations of bad faith or conspiracy and asserts that the cases cited by Defendants are inapposite to his cause of action because he is challenging the constitutionality of O.C.G.A. § 17–6–90.

In *Lugar* the Supreme Court held that joint participation did not require more than a private individual's mere invocation of a state prejudgment attachment statute. The Supreme Court, however, specifically limited its holding to prejudgment attachments. 457 U.S. at 939 n. 21, 102 S.Ct. at 2755; *see also Cobb* at 1252. *Lugar* is also distinguishable because the joint action test "is inapplicable to cases in which a private party is alleged to be a state actor merely because it brought suit and invoked the independent judgment of the state judiciary. *Lugar* does not contain even a passing reference to the possibility that a *neutral* state judge could be considered a joint actor." *Smith v. Wood,* 649 F.Supp. 901 (E.D.Pa.1986) (emphasis added).

■ For purposes of this motion the Court is willing to assume, without deciding, that a private party who invokes a state statute, which is later judged to be unconstitutional, is a state actor and that O.C.G.A. § 17–6–90 is unconstitutional. Even if, however, Defendants are state actors they are entitled to summary judgment on their good faith defense. In *Lugar* the majority noted that:

> Justice POWELL is concerned that private individuals who innocently make use of seemingly valid state laws would be responsible, if the law is subsequently held to be unconstitutional, for the consequences of their actions. In our view, however, this problem should be dealt with not by changing the character of the cause of action but by establishing an affirmative defense.

457 U.S. at 942 n. 23, 102 S.Ct. at 2756 n. 23. The Supreme Court subsequently held that qualified immunity is not available to private defendants in a § 1983 action. *Wyatt v. Cole,* 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). Justice O'Connor writing for the Court, however, stated that "[w]e do not foreclose the possibility that private defendants faced with § 1983 liability under *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), could be entitled to an affirmative defense based on good faith and/or probable cause." *Wyatt,* 504 U.S. at 169, 112 S.Ct. at 1834. The Supreme Court then remanded the case to the Fifth Circuit to determine whether the defendants had acted under color of state law under *Lugar.*

■ On remand the Fifth Circuit recently concluded that although the defendants were state actors they were not liable for damages because "private defendants sued on the basis of *Lugar* may be held liable for damages under § 1983 only if they failed to act in good faith in invoking the unconstitutional state procedures, that is, if they either knew or should have known that the statute on which they relied was unconstitutional." *Wyatt v. Cole,* 994 F.2d 1113, 1118 (5th Cir. 1993). The Fifth Circuit noted that "[t]he five Justices who either concurred or dissented [in *Wyatt*] were more forthright in their support of a standard that would relieve private parties who reasonably relied on a state statute of liability." 994 F.2d at 1118 (*citing* [*Wyatt* ] 504 U.S. at 170–75, 112 S.Ct. at

1835–37 (Kennedy J., joined Scalia, J., concurring); *id.* at 177–78, 112 S.Ct. at 1838–39 (Rehnquist, C.J., joined by Souter & Thomas, JJ., dissenting)). This Court adopts the Fifth Circuit's good faith test for a private defendant in a § 1983 action, which has an objective and subjective component, in assessing whether Defendants are entitled to summary judgment. The Court initially notes that a plaintiff bears the burden of proof on the issues of malice and probable cause and that a defendant may avoid § 1983 liability by demonstrating an absence of either. *Wyatt,* 994 F.2d at 1120–21 (*citing Wyatt,* 504 U.S. at 174–75, 112 S.Ct. at 1837 (Kennedy, J., concurring), and 504 U.S. at 177–78, 112 S.Ct. at 1838–39 (Rehnquist, J., dissenting)). There is no evidence in this case demonstrating that O.C.G.A. § 17–6–90 has never been held unconstitutional. Furthermore, Defendants relied on the advice of counsel in swearing out a warrant for Plaintiff's arrest. Thus, Defendant's resort to the statute was not objectively unreasonable. *See Wyatt,* 994 F.2d at 1120 (objective prong of good faith test met because there was no evidence that statute was unconstitutional and defendant relied on attorney's advice in invoking statute). Therefore, the Court turns to the question of whether the Defendants actually believed that the statute was constitutionally valid at the time Ms. Fraichard sought the warrant for Plaintiff's arrest.[4]

The record is devoid of any evidence demonstrating that the Defendants acted in bad faith, which is shown by evidence that the defendant was actually aware that the statute was constitutionally infirm. *Wyatt,* 994 F.2d at 1120. ("allegations detailing [defendant's] misuse and abuse of state procedures [does not] bear on whether he in fact believed the [state] statute to be constitutionality infirm.") Summary judgment is appropri-

ate where there is an absence of evidence showing that a defendant had actual knowledge that a statute was unconstitutional. *Id.* at 1121. Consequently, summary judgment is appropriate on Plaintiff's § 1983 claim.

## II. STATE LAW CLAIMS

Plaintiff has alleged malicious prosecution, false arrest and intentional infliction of emotional distress.

### A. Malicious Prosecution

■■■ Plaintiff must prove maliciousness as well as lack of probable cause to proceed on his claim for malicious prosecution. Plaintiff contends summary judgment is inappropriate because probable cause is a jury question. *See* O.C.G.A. § 51–7–3. Section 51–7–3 provides:

> "[l]ack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused. Lack of probable cause shall be a question for the jury, under the direction of the court.

The Georgia Court of Appeals has stated that even though the code section states that probable cause is a jury question "there is nothing to send to the jury when the plaintiff does not at least raise some evidence creating an issue of fact on the matter." *Pinkston v. Albany,* 196 Ga.App. 43, 46–47, 395 S.E.2d 587, 590, (1990); *accord Medoc Corp. v. Keel,* 166 Ga.App. 615, 305 S.E.2d 134 (1983). If probable cause for the arrest exists, then a plaintiff's claims of malicious prosecution is automatically defeated. *Nunnally v. Revco Discount Drug Centers, Inc.,* 170 Ga.App. 320, 316 S.E.2d 608, 609 (1984). The evidence in the instant action shows that

4. Justice Kennedy emphasized the subjective element of the good faith defense stating:

> [i]t seems problematic to say that a defendant should be relieved of liability under some automatic rule of immunity if objective reliance upon a statute is reasonable but the defendant in fact had knowledge of its invalidity. Because the burden of proof on this question is the plaintiff's, the question may be resolved on summary judgment if the plaintiff cannot come forward with facts from which bad faith can be

> inferred. But the question is a factual one and the plaintiff may rely on circumstantial rather than direct evidence to make his case. (Citation omitted.) The rule of course works in the reverse, for the existence of a statute thought valid ought to allow the defendant to argue that he acted in subjective good faith and is entitled to exoneration no matter what the objective test is.

> *Id.* 504 U.S. at 174, 112 S.Ct. at 1836–37 (Kennedy, J., concurring).

probable cause existed to issue a warrant pursuant to O.C.G.A. § 17–6–90.

Moreover, O.C.G.A. § 51–7–1 requires that the arrest be made "maliciously." "Malice consists in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured." O.C.G.A. § 51–7–2. The question is whether the existence of the suit in Superior Court is enough to permit a reasonable inference that Fraichard was motivated by personal spite or a general disregard for mankind directed by chance at Plaintiff. The Court finds it does not. The evidence shows that Ms. Fraichard sought the warrant only after she had made other attempts to get Plaintiff to move his car. Consequently, summary judgment is appropriate on this claim.

**B. False Imprisonment**

 False imprisonment is "the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51–7–20. An action for false imprisonment may be maintained only when the warrant or process is void. *Reese v. Clayton County*, 185 Ga.App. 207, 207–208, 363 S.E.2d 618, 619 (1987). Since the Court has concluded that there was probable cause under O.C.G.A. § 17–6–90, this claim is not available. *Williams v. Smith*, 179 Ga.App. 712, 348 S.E.2d 50 (1986). Thus, summary judgment also is appropriate on this claim.

**C. Intentional Infliction**

 Plaintiff asserts that Defendants acts and omissions of Defendants jointly and severally constitute an intentional infliction of emotional distress. A Plaintiff must establish three elements to maintain a claim for intentional infliction of emotional distress: (1) that by his actions the defendant intended to cause emotional upset to the plaintiff; (2) the defendant's conduct was extreme and of an outrageous or egregious nature or so terrifying or insulting as to naturally humiliate, embarrass or frighten the plaintiff, *Moses v. Prudential Ins. Co.*, 187 Ga.App. 222, 369

S.E.2d 541 (1988); and (3) that the plaintiff suffered extreme emotional upset as a result of the defendant's actions. *Ingram v. JIK Realty Co.*, 199 Ga.App. 335, 336, 404 S.E.2d 802 (Ga.App.1991). Summary judgment is appropriate unless " 'the distress inflicted [was] so severe that no reasonable man could be expected to endure it. It is for the court to determine whether on the strength of the evidence *severe* emotional distress can be found.' " *Id.* (Citation omitted).

 "Evidence of a defendant's malicious purpose or of a defendant's wanton disregard of a plaintiff's rights may be considered in evaluating whether or not the objected to behavior can reasonably be characterized as outrageous or egregious." *Gordon v. Frost*, 193 Ga.App. 517, 521–22, 388 S.E.2d 362, 366 (1989). The evidence shows that Ms. Fraichard sought an arrest warrant only after Plaintiff repeatedly refused to move his car. Additionally, Plaintiff turned himself in and was never handcuffed or placed in a squad car. Under these circumstances, the Court finds that Plaintiff has not made out a claim for intentional infliction of emotional distress as a matter of law.

**CONCLUSION**

Accordingly, for the reasons stated above, Defendants' motion for summary judgment is GRANTED. The Court acknowledges that *Wyatt v. Cole*, 994 F.2d 1113 (5th Cir.1993) was decided after Defendants' motion was briefed and argued. Therefore, the Court will entertain a motion for reconsideration on the issue of the good faith defense. Plaintiff should file such a motion within 15 days from entry of this order and Defendants should reply 5 days thereafter.

SO ORDERED.