## 44487. BENTON v. PATEL et al.

(362 SE2d 217)

BELL, Justice.

In this case we are called upon to decide whether the superior court was correct in granting an interlocutory injunction prohibiting the appellant, Benton, from foreclosing under a deed to secure a debt owed by the appellees, the Patels. For the reasons which follow we reverse the judgment.

The real estate in question is a tract of land, together with improvements thereon, located on the south side of the city of Douglas, Ga., and known as Benton's Motel. In 1977 the appellant sold the motel to predecessors in title of the appellees. As part of the transaction the purchasers gave appellant a promissory note in the amount of $155,000 and a deed to secure debt. Among the terms of the deed was the following provision requiring the grantors to maintain insurance on the improvements: "The maker hereof . . . agrees to keep the buildings on said described property in first class repair and insure against fire and windstorm to the amount of One Hundred Fifty-Five Thousand and no/100 Dollars ($155,000.00), in some responsible insurance company acceptable to the holder of said note, with loss, if any payable to such holder as the interest of such holder may appear. And should [the grantor] fail to keep said property insured as above provided, or fail to pay the premiums on said insurance, . . . the [grantee or his assigns] may insure said property, and pay the premiums on insurance, . . . and any amount paid for said purpose or for any like purpose (which is hereby authorized) shall become a part of the principal sum secured by this deed, and shall bear interest at the rate of 6-½ percent, per annum.

"It is agreed that time is of the essence of this contract, and that . . . if the buildings on said property are not kept insured as provided above, or the premiums for such insurance are not promptly paid, . . . said debt, together with all interest thereon, shall at once become due and payable at the option of the holder thereof; it being specially stipulated that any waiver of the holder of said note of the right to take advantage of any provisions herein contained by suit or in any other manner shall not be construed as a waiver of such right at any subsequent time."

In 1984 the appellees purchased Benton's Motel, assuming the

note held by appellant and obligating themselves to pay a second note. They subsequently operated the motel as a family business. In June of 1986 the appellant and the appellees received notice from the appellees' insurer that insurance on the motel improvements would be cancelled effective July 26, 1986.[1] Between July 26 and October 9, 1986, appellant informed appellees several times that he was concerned about their failure to maintain insurance and that they needed to obtain a replacement policy. During that period appellees made several unsuccessful attempts to find a policy. An agent for Nationwide Insurance Companies testified that during that period one of the appellees contacted him to ask whether he could provide the appellees with insurance coverage on the motel. The agent said that "Nationwide would not write motel coverages at that time. I had no markets, and I informed him of that." According to the agent, his failure to obtain insurance was not the appellees' fault. A second insurance agent[2] testified that one of the appellees had contacted him for the same purpose. The agent said that he attempted to provide insurance for the motel by calling "the one company I thought that [might] do it for us, and they would not do it." When asked whether he knew why he had not been able to obtain insurance for the appellees he responded, "[n]ot really, except we were turned down for a lot of insurance coverages last year. The companies have been really tight on us."

On October 9, 1986, counsel for appellant sent appellees a letter notifying them that appellant was declaring the entire debt due and was foreclosing the deed to secure debt for failure to maintain insurance. Appellees received this notice on October 14. Appellant's counsel also made arrangements with a local newspaper for publication of a notice of foreclosure. The notice was to be published on November 5, 12, 19, and 26, 1986.

On October 10, 1986, an insurance agent in Birmingham, Alabama, informed appellees that he had located an insurer, Island Group, Ltd., Grand Turk, Turks and Caicos Islands, West Indies,[3] which was willing to write a policy on the motel. On that same day appellees mailed a premium check to the agent, and telephoned appellant to notify him that they had found insurance. According to appellees, he told them that "I don't want to listen to anything. If you want to listen to anything, you go to my lawyer . . . ." Appellees then

---

[1] It is undisputed that the cancellation was not the appellees' fault.

[2] This was an independent insurance agent who said that he "guessed" that he had agency contracts with about 8 or 10 insurance companies.

[3] A representative of the Georgia Insurance Commissioner testified that Island Group, Ltd. does not have a certificate of authority from the Commissioner to write insurance, and hence is not qualified to do business in the State of Georgia. The representative also testified, however, that he had no knowledge of the reserves or financial position of Island Group.

telephoned appellant's attorney and gave him the same information. On October 16 Island Group issued a binder, effective October 15. Appellant did not cease his attempt to foreclose, and so on November 21, 1986, appellees filed a complaint for wrongful foreclosure, praying for interlocutory and permanent injunctive relief to prohibit the foreclosure, and for actual and punitive damages, attorney fees, and costs.

On January 16, 1987, the court held an evidentiary hearing on the prayer for an interlocutory injunction. During the hearing the appellant was asked why he was demanding that appellees keep insurance on the improvements, to which he replied, in essence, that the real property was not worth the balance of the note owed to him and he therefore would lose money if the improvements were destroyed.

Testimony at the hearing showed that the outstanding amount owed on the note held by appellant was between seventy and eighty thousand dollars, and the amount owed on the second note was approximately twenty thousand dollars. The holder of the latter note testified that despite the cancellation of insurance he was not concerned that he lacked security, because, he said, even if the motel burned the land alone was worth more than the total of the balances of the two notes. A real estate appraiser agreed with him, testifying for appellees that as of November 1986 Benton's Motel had a fair market value, including both land and improvements, of $410,000, and a fair market value, land only, of $184,800.

After the hearing the superior court entered findings of fact and conclusions of law, granting appellees the interlocutory injunctive relief they sought. In support of the judgment the court found that the insurance policy which was in effect until July 26, 1986, had been cancelled through no fault of the appellees. The court found, further, that the lapse in insurance coverage between July 26 and October 15, 1986, had been beyond the control of the appellees and that appellees had made reasonable efforts to maintain insurance coverage. The court also found that the value of the real property, minus any improvements, far exceeded the unpaid balance owed by appellees to appellant.[4] Finally, the court found that appellant had failed to exercise his authority under his deed to secure debt to obtain insurance himself and apply the amount of the premium to the principal sum secured by the deed to secure debt. Based on these findings of fact, the court concluded that appellees had met their obligations under the deed to secure debt, were at that time in compliance with their

---

[4] The record supports this finding. Although the appellant testified that he thought the real property, less the improvements, was not worth the balance owing on his note, the contradictory testimony of the professional appraiser and the holder of the second note authorized the superior court to find that the value of the real property alone in fact far exceeded the unpaid balance owed to appellant.

obligations under the deed, and were entitled to an interlocutory injunction.

After reviewing the record and the law applicable to this appeal, we find that, although the superior court's findings of fact are supported by the evidence, those findings are not relevant to the material issues. We rule, further, that the court's legal conclusions are erroneous and that the court's grant of interlocutory injunctive relief must be reversed.

1. "The grant or denial of an interlocutory injunction rests in the sound discretion of the trial court. *MARTA v. Wallace*, 243 Ga. 491 (3) (254 SE2d 822) (1979). The purpose for granting interlocutory injunctions is to preserve the status quo, as well as balance the conveniences of the parties, pending a final adjudication of the case. Id. Consequently, the applicant for an interlocutory injunction need not . . . demonstrate irreparable injury as a prerequisite to entitlement to interlocutory injunctive relief." *Jackson v. Delk*, 257 Ga. 541, 543 (4) (c) (361 SE2d 370) (1987). "However, where there is no conflict in the evidence, the judge's discretion in granting or denying the interlocutory injunction becomes circumscribed by the applicable rules of law." *Zant v. Dick*, 249 Ga. 799, 799-800 (294 SE2d 508) (1982). Accord *Slaven v. City of Buford*, 257 Ga. 100 (355 SE2d 663) (1987).

After careful consideration of the record we find, as previously indicated, that the superior court's findings are supported by the evidence. However, as we will explain, we now hold that under the applicable law these findings were irrelevant to determining whether appellees were entitled to injunctive relief. "Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised," OCGA § 23-2-114, but this rule does not apply if the power is unambiguous and is being exercised as the deed provides, *Tybrisa Co. v. Tybeeland, Inc.*, 220 Ga. 442, 444 (139 SE2d 302) (1964). "If there is any question as to construction of a deed to secure debt either by virtue of its original terms or a course of conduct which waives strict performance,[5] a question for the jury is presented." Id. at 445. However, "[i]n construing such instruments the words employed to express the intention of the parties will be given their ordinary signification, and where the language of the document is plain, its meaning will not be extended by interpretation. *Wolverine Ins. Co. v. Jordan*, 213 Ga. 299, 302 (99 SE2d 95)." *Cordele Banking Co. v. Powers*, 217 Ga. 616, 620 (1) (124 SE2d 275)

---

[5] Appellees do not contend that appellant's conduct may be interpreted as a waiver of his right to foreclose. It is clear that such a contention would have no merit even if appellees had raised it, inasmuch as appellant allowed appellees a reasonable period to obtain insurance but also unequivocally insisted throughout that period that they had to obtain insurance. See *Duncan v. Lagunas*, 253 Ga. 61 (1) (316 SE2d 747) (1984).

(1962).

In the instant case our examination of the plain wording of the deed shows that the superior court's factual findings, although correct, do not address the appellant's power to foreclose. The security deed, in plain and unambiguous terms, both requires the grantors to maintain insurance on the motel improvements and confers on the grantee a power to foreclose on the motel in the event that such insurance is not maintained. The language of the deed leaves no room for an interpretation that the power cannot be exercised if failure to maintain insurance is attributable to impossibility, impracticability, or a third party's noncooperation. The deed makes no allowance for the good faith efforts of the appellees to maintain insurance on the premises, nor does it prohibit the grantee from foreclosing if the value of the real property without the improvements exceeds the balance remaining on the note. Certainly, the security deed does not proscribe foreclosure if the grantee does not exercise his authority to obtain insurance himself and add the amount of the premiums to the principal sum. The deed plainly makes the grantee's authority to obtain insurance an *option* which he may exercise in lieu of foreclosure; the deed does not make exercise of that authority a *prerequisite* to foreclosure for failure to maintain insurance.

In light of the terms of the security deed, the chief material issue of fact is, simply stated, whether the appellees failed to maintain the required insurance. They unquestionably did fail to maintain it, and the inescapable conclusion is that they were in default for the period July 26 to October 15, 1986.

2. The remaining legal issue for consideration is whether the appellees' tender of the Island Group, Ltd. binder cured their default, thus enabling appellees to prevent acceleration and foreclosure. The appellant contends that he is entitled to reject the Island Group, Ltd. policy because the insurer lacks a certificate of authority, and therefore is not "some responsible insurance company acceptable to the holder." However, we find it unnecessary to consider this argument, for the following reasons.

Let us assume without deciding that, notwithstanding the lack of a certificate of authority, the policy was a legally valid policy, and that, notwithstanding the language of the deed which mandated the company to be a responsible company acceptable to appellant, appellant did not have the right to reject the policy on that ground. Even so, we conclude that the tender of the binder did not defeat the appellant's right to foreclose, because the tender came too late.[6] Appel-

---

[6] As we have already found, the parties did not mutually depart from appellant's contractual rights to declare a default, accelerate the note, and seek foreclosure.

lees received appellant's declaration of acceleration and foreclosure at least one day[7] before the date on which they obtained insurance. Hence, even if the policy was valid, its existence did not cure the default. See *Duncan v. Lagunas*, 253 Ga. 61 (2) (316 SE2d 747) (1984).

3. Because we have ruled that appellant has the legal right to foreclose, we hold that the superior court abused its discretion in granting the interlocutory injunction. The judgment is reversed. Appellees have filed a motion to impose a penalty pursuant to Rule 14 of this court, which we hereby deny.

*Judgment reversed. Motion for Rule 14 penalty denied. All the Justices concur.*

DECIDED NOVEMBER 24, 1987 —
RECONSIDERATION DENIED DECEMBER 16, 1987.

*Preston & Preston, Robert H. Preston*, for appellant.
*McRae & English, Earl M. McRae, Jr.*, for appellees.

---

[7] We have not found any information in the record which would indicate exactly when the appellees tendered the binder of insurance to appellant. However, it clearly could not have been any earlier than October 15, the date the binder was effective.