A90A1299. YARBRAY v. SOUTHERN BELL TELEPHONE &
TELEGRAPH COMPANY.
(399 SE2d 718)

McMURRAY, Presiding Judge.

Shirley Yarbray (plaintiff) brought an action against Southern Bell Telephone & Telegraph Company ("Southern Bell"), alleging invasion of privacy, intentional infliction of emotional distress and defamation. Southern Bell denied the material allegations of the complaint and moved for summary judgment. The evidence, construed in a light which most favorably supports plaintiff's claims,[1] reveals the following:

Plaintiff began working for Southern Bell in 1954. She was then

---

[1] "On motion for summary judgment, ' "[t]he burden is upon the moving party, and the party opposing the motion is given the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence. *Holland v. Sanfax Corp.*, 106 Ga. App. 1 (126 SE2d 442)." *Internat. Brotherhood v. Newman*, 116 Ga. App. 590, 592 (158 SE2d 298). The movant "has this burden even as to issues upon which the opposing party would have the trial burden. And the moving party's papers are carefully scrutinized, while the opposing party's papers, if any, are treated with considerable indulgence." 6 Moore's Federal Practice, (2nd Ed.) 2853, § 56.23.' *Colonial Stores v. Turner*, 117 Ga. App. 331, 333 (160 SE2d 672)." *Baggs v. Chatham County Hosp. Auth.*, 187 Ga. App. 834, 835 (1) (371 SE2d 653).

18 or 19 years of age. Over the years, plaintiff developed a good employment record and, by June of 1977, she was a middle-level manager, working in the Human Resources Department at Southern Bell. Plaintiff's duties included investigating and evaluating employment discrimination claims and administering guidelines for the selection of Southern Bell management personnel.

On March 11, 1988, plaintiff filed a federal age discrimination lawsuit against Southern Bell. On March 16, 1988, plaintiff was named as a potential witness in another age discrimination case filed in the United States District Court, Northern District of Georgia, against Southern Bell, *Pilgrim v. Southern Bell Tel. &c. Co.*, Civil Action No. 1:87-CV-373-WCO. Shortly thereafter, plaintiff was questioned by a Southern Bell attorney, Audrey Polk, regarding plaintiff's knowledge of the *Pilgrim* age discrimination suit. Plaintiff informed Southern Bell's attorney, Ms. Polk, that she was not familiar with the case.

On March 23, 1988, plaintiff's supervisor (Dave Lane) informed her "that any information [plaintiff] had access to in the course of [her] job was considered proprietary and was not to be used in [plaintiff's employment discrimination case] or any other litigation." Plaintiff informed Mr. Lane that she had "not and did not intend to misuse any proprietary information." (Plaintiff later gave her attorney information regarding a Southern Bell early retirement plan, aimed at reducing "the average age of each of the management pay grades.")

On March 29, 1988, another Southern Bell attorney, Keith W. Kochler, informed plaintiff "that as a manager of the company [she] would be expected to represent Southern Bell if . . . subpoenaed to court." Plaintiff responded that she would "tell the truth, and [attorney Kochler] said, I certainly hope that you will. . . ." Plaintiff then "asked him to explain what he meant by represent the company, [but plaintiff] did not get an explanation back." Attorney Kochler simply restated, "that as a manager of Southern Bell you are expected to represent the company." Mr. Kochler also stated that "he hoped that this would not affect [plaintiff's] job. . . ."

Plaintiff appeared as a witness at the *Pilgrim* trial and testified that she is responsible for processing "all of the management promotional/lateral movement packages, payroll changes . . . for the company headquarters area"; that she handled almost 1,900 promotion/lateral movement packages in 1987 and that she does not *recall ever seeing an employee promoted from nonmanagement to management who was over 40, and definitely not over 50.*" (Emphasis supplied.) Plaintiff further testified that Southern Bell's employee qualification procedures are rarely followed; that the procedures only give the appearance of objectivity and that younger employees are more often selected for promotion than equally qualified older employees.

The *Pilgrim* case was settled after plaintiff's testimony. Later, Southern Bell's attorneys (Mr. Kochler and Ms. Polk) went to plaintiff's supervisor, Dave Lane, and discovered that plaintiff had approved six "over-40" promotions, from non-management to management, during the year prior to the *Pilgrim* trial.

On June 14, 1988, Mr. Lane summoned plaintiff and another Southern Bell employee to his office. Mr. Lane then "advised [plaintiff] that because [she] had 'misrepresented the facts' on the witness stand in the *Pilgrim* case, and because [she] had given too much information, [plaintiff] would be transferred to the Network Department effective June 16, 1988." Mr. Lane also informed plaintiff that he thought there was a conflict of interest with plaintiff in her present position and that the new job would enable plaintiff to grow in another area. The transfer was later completed and plaintiff was given the same pay and the same benefits, but she was not exposed to employment related information at Southern Bell.

Plaintiff was not comfortable in her new position and plaintiff's supervisor, John Daughtridge, was not satisfied with her. Mr. Daughtridge openly criticized plaintiff, including her punctuality, her lack of team participation, her absenteeism, her lack of communication, her lack of accountability and her failure to work well with other employees. Mr. Daughtridge characterized plaintiff as argumentative and insubordinate and he attempted to recruit another employee to "prepare a statement about [plaintiff's] work performance and overall attitude." The employee refused because "she thought it was an unfair request." Mr. Daughtridge avoided contact with plaintiff and routinely failed to "acknowledge [plaintiff's] presence in the office." However, on September 13, 1988, Mr. Daughtridge abrasively criticized plaintiff, telling her "in a very loud voice that I do not want you here, I do not want you on my team. . . ." The reprimand was so loud and harsh that another employee shut a door to buffer the oppressive tenor of the meeting.

The trial court granted Southern Bell's motion for summary judgment on all counts of the complaint. This appeal followed. *Held*:

1. In her first enumeration, plaintiff challenges the trial court's order granting Southern Bell's motion for summary judgment on her invasion of privacy claim.

(a) Plaintiff first contends the evidence of her March 1988 meetings with attorney Polk, supervisor Lane and attorney Kochler supports her invasion of privacy claim. More specifically, plaintiff contends that her "fundamental right [of privacy] was violated when Southern Bell attempted to use its position to coerce or intimidate her from testifying according to her own free will. . . ."

Personal privacy rights are distilled from the concept of the " 'right to enjoy life — the right to be let alone . . .' 4 [Harvard Law

Review] 193." *Macon-Bibb County Water &c. Auth. v. Reynolds*, 165 Ga. App. 348, 349 (2), 350 (299 SE2d 594). However, " 'only the more flagrant breaches of decency and propriety [can sustain an action for invasion of privacy].' [4 Harvard Law Review 218.] To illustrate how restricted the right is and how outrageous and indecent its violation must be to give rise to a cause of action, . . . the alleged violation must be tested on the basis of the innocence and good faith of the actor. . . ." *Davis v. Gen. Fin. &c. Corp.*, 80 Ga. App. 708, 710 (4) (57 SE2d 225). In the case sub judice, nothing indecent or outrageous could possibly be inferred from the alleged March 1988 meetings between plaintiff and attorney Polk and supervisor Lane.

There is no evidence that attorney Polk or supervisor Lane threatened or coerced plaintiff in order to compel her to actually compromise testimony during the *Pilgrim* trial. On the contrary, the undisputed evidence shows that attorney Polk and supervisor Lane restricted their discussions with plaintiff to areas professionally and ethically germane to the parties' functions as Southern Bell employees, i.e., attorney Polk questioned plaintiff's "knowledge" of the *Pilgrim* case and supervisor Lane directed "that any information [plaintiff] had access to in the course of [her] employment was considered proprietary and was not to be used in [plaintiff's employment discrimination case] or any other litigation." However, the same conclusion cannot be drawn from evidence surrounding plaintiff's March 29, 1988, meeting with attorney Kochler.

Attorney Kochler allegedly informed plaintiff that she first had a duty of loyalty to Southern Bell if called as a witness in the *Pilgrim* case. He then told plaintiff that "he hoped that this would not affect [her] job. . . ." In context, these comments could easily be construed as a threat in order to coerce favorable testimony for Southern Bell. Even worse, the comments could be interpreted as and taken as an attempt to suborn perjury. This court has already condemned such conduct in the wake of an invasion of privacy claim. *Troy v. Interfinancial*, 171 Ga. App. 763, 769 (3) (320 SE2d 872). Nonetheless, outrageous conduct alone will not sustain an action for invasion of privacy. The effects of the malignant conduct upon a person of "ordinary sensibilities" under like or similar circumstances must also be considered.

"[T]he protection afforded by the law to the right of privacy must be restricted to 'ordinary sensibilities' and not to super-sensitiveness or agoraphobia. 41 Am. Jur. § 12, p. 934-5. There are some shocks, inconveniences and annoyances which members of society in the nature of things must absorb without the right of redress." *Davis v. Gen. Fin. &c. Corp.*, 80 Ga. App. 708, 710 (4), 711, supra.

Under the circumstances of the case sub judice, we do not view attorney Kochler's conduct as so shocking and outrageous as to cause

mental suffering, shame or humiliation to the ordinary person of "ordinary sensibilities." Consequently, plaintiff's right to privacy claim based on interference with her right to testify is without merit.

(b) Plaintiff also contends that her "fundamental right [of privacy] was violated when Southern Bell [retaliated] against her after she did testify." Plaintiff first points to evidence of her transfer from the personnel department.

"The right of privacy is not absolute, but is qualified by the rights of others." *Gouldman-Taber Pontiac v. Zerbst*, 213 Ga. 682, 683 (3), 684 (100 SE2d 881). In the case sub judice, Southern Bell had a legitimate interest in transferring plaintiff from a position which exposed her to conflicting loyalties and interests. The undisputed evidence shows that plaintiff was embroiled in a federal age discrimination dispute with Southern Bell at the time of her transfer; that plaintiff had, before the transfer, participated as an adverse witness to Southern Bell in another age discrimination lawsuit; and, that plaintiff's duties in the personnel department included the exercise of unbiased judgment in evaluating discrimination claims against Southern Bell. Consequently, even assuming that Southern Bell's transfer of plaintiff from personnel was retaliatory, we find the circumstances insufficient to sustain plaintiff's invasion of privacy claim. See *Jones v. Flagship Intl.*, 793 F2d 714, 726 (5th Cir. 1986).

Next, plaintiff enumerates evidence of her difficulties with supervisor John Daughtridge as proof of invasion of privacy based on retaliation. We do not agree.

" 'No individual can live in an ivory tower and at the same time participate in society and expect complete non-interference from other members of the public.' [Cit.]" *Gouldman-Taber Pontiac v. Zerbst*, 213 Ga. 682, 683 (3), 684, supra. While the evidence in the case sub judice may be sufficient to sustain a finding that supervisor Daughtridge exercised extremely poor judgment in dealing with plaintiff, the personality conflicts between plaintiff and supervisor Daughtridge are not sufficient to sustain a cause of action against Southern Bell for invasion of privacy. Personality conflicts between co-employees are often frustrating and embarrassing and should ultimately "be resolved by the mutual employer[, and such matters] should not be litigated in a court of law." *Kornegay v. Mundy*, 190 Ga. App. 433 (1), 435 (379 SE2d 14). This enumeration is without merit.

2. In her second enumeration, plaintiff contends the trial court erred in granting Southern Bell's motion for summary judgment on her claim of intentional infliction of emotional distress.

"In order to sustain a cause of action for intentional infliction of emotional distress, the plaintiff must show that the defendant's actions were so terrifying or insulting as naturally to humiliate, embar-

rass, or frighten the plaintiff." (Endnote omitted.) Charles R. Adams III & Cynthia Trimboli Adams, Ga. Law of Torts, § 29-2, p. 340. "Further, the severity of the emotional distress allegedly produced . . . is also a factor in determining liability for mental distress. *Moses* [*v. Prudential Insurance Company of America*, 187 Ga. App. 222, 226 (369 SE2d 541)]. The law will intervene only where the distress inflicted is so severe that no reasonable man could be expected to endure it. Id. It is for the court to determine whether on the strength of the evidence *severe* emotional distress can be found. Id." *Quinones v. Maier & Berkele*, 192 Ga. App. 585, 587 (1, a) (385 SE2d 719).

In the case sub judice, plaintiff argues that the evidence which supports her claim for invasion of privacy also supports her claim for intentional infliction of emotional distress. We do not agree. There is insufficient evidence to authorize a finding that Southern Bell's conduct was so terrifying or insulting as to naturally humiliate, embarrass, or frighten plaintiff. This enumeration is without merit.

3. In her final enumeration, plaintiff contends the trial court erred in entering summary judgment for Southern Bell on her defamation (slander) claim.

" ' "A corporation will not be liable for any slander uttered by an officer, even though he be acting honestly for the benefit of the company and within the scope of his duties, unless it can be proved that the corporation expressly ordered and directed that officer to say those very words: for a slander is the voluntary and tortious act of the speaker." (Cits.) "As a corporation can act only by or through its agents, and as there can be no agency to slander, it follows that a corporation cannot be guilty of slander; it has not the capacity for committing that wrong. If an officer or an agent be guilty of slander, he is personally liable, and no liability results to the corporation." (Cits.)' [Cits.]" *Church of God v. Shaw*, 194 Ga. App. 694 (1) (391 SE2d 666).

In the case sub judice, there is evidence that Southern Bell employees stated that plaintiff had " 'misrepresented the facts' " at the *Pilgrim* trial. However, there is no evidence or allegation that Southern Bell expressly authorized its agents or employees to utter these words. Consequently, the trial court did not err in granting summary judgment to Southern Bell on plaintiff's defamation claim.

*Judgment affirmed. Carley, C. J., and Sognier, J., concur.*

DECIDED NOVEMBER 16, 1990 —
REHEARING DENIED DECEMBER 4, 1990 — ▮▮▮▮▮▮▮▮

*Ford & Haley, James L. Ford*, for appellant.
*Jones, Day, Reavis & Pogue, John F. Wymer III, Deborah A.*

*Sudbury*, for appellee.