A90A2238. INGRAM v. JIK REALTY COMPANY, INC.
A90A2239. INGRAM v. J. I. KISLAK MORTGAGE SERVICE CORPORATION et al.
(404 SE2d 802)

Cooper, Judge.
 In August 1983, Harold Robinson ("Robinson") obtained a second mortgage on the subject property and executed a promissory note and deed to secure debt in favor of Atlantic Mortgage Company. (Atlantic subsequently changed its name to First American South, but will hereinafter be referred to as "Atlantic"). Because the terms of Robinson's first mortgage did not permit a second mortgage on the property, in October 1984, Robert Westmoreland ("Westmoreland"), a corporate vice-president for Atlantic executed a quitclaim deed on the subject property which cancelled Atlantic's deed to secure debt (the quitclaim deed is hereinafter referred to as the "Atlantic-Robinson quitclaim deed"). It is undisputed that the debt owed by Robinson was not paid at the time the deed to secure debt was cancelled, and that Robinson continued to make payments on the note. Despite the cancellation of the deed to secure debt, in June 1985, Atlantic sold the promissory note and deed to secure debt to E. F. Hutton Mortgage Company ("Hutton"). The mortgage purchased by Hutton from Atlantic was serviced by John Byrne ("Byrne") of J. I. Kislak Mortgage Service Company ("Kislak") and when the mortgage went into default in May 1988, it was assigned to JIK Realty Company ("JIK") for the purpose of instituting a foreclosure proceeding against the subject property, which had been purchased by appellant from Robinson in December 1986.
 The litigation which forms the basis of this appeal commenced in June 1988 when appellant filed a complaint against JIK, seeking a

temporary and permanent injunction prohibiting the foreclosure. In support of his complaint, appellant attached the Atlantic-Robinson quitclaim deed. The temporary restraining order was granted, but at the hearing on the interlocutory injunction in September 1988, JIK filed an affidavit of forgery signed by Byrne pursuant to OCGA § 44-2-23, contending that the Atlantic-Robinson quitclaim deed was a forgery, and the trial court denied the injunction.

After conducting discovery, appellant moved for summary judgment on his request for a permanent injunction, attaching in support of his motion affidavits establishing that the signature on the Atlantic-Robinson quitclaim deed was that of Westmoreland, an officer of Atlantic. While that motion was pending, appellant filed an amendment to his complaint in January 1989 to include claims for abusive litigation, intentional infliction of emotional distress and bad faith. JIK did not oppose appellant's motion for summary judgment on the permanent injunction issue and the motion was granted in April 1989. In June 1989, JIK filed a motion for summary judgment on appellant's claim for abusive litigation, and in July 1989, prior to the court's ruling in JIK's motion, appellant added as party-defendants Hutton, Kislak and Byrne. On December 4, 1989, the trial court granted JIK's motion for summary judgment. On December 28, 1989, JIK and the added defendants moved for summary judgment on appellant's claim for intentional infliction of emotional distress, and the added defendants moved for summary judgment on appellant's abusive litigation claim. On March 15, 1990, the trial court granted both motions.

In Case No. A90A2238, appellant appeals from the December 4, 1989, order granting summary judgment to JIK on appellant's abusive litigation claim. In Case No. A90A2239, appellant appeals from the trial court's March 15, 1990, order granting summary judgment to all the defendants on appellant's claim for intentional infliction of emotional distress and to the added defendants on the abusive litigation claim.

1. We first consider whether summary judgment was properly granted to all of the defendants on appellant's claim of intentional infliction of emotional distress. "On motion for summary judgment, the burden of showing the absence of any genuine issue of material fact rests upon movant, and the party opposing the motion is given the benefit of all reasonable doubts and favorable inferences that may be drawn from the proof offered. [Cit.]" *Coleman v. Housing Auth. of Americus*, 191 Ga. App. 166, 169 (1) (381 SE2d 303) (1989). "Georgia law recognizes the tort of intentional infliction of emotional distress. [Cits.] The burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one, however. 'In order to sustain a cause of action in this state for the tort of intentional infliction of

emotional distress, a plaintiff must show that "defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff." ' [Cits.]" *Bridges v. Winn-Dixie Atlanta*, 176 Ga. App. 227, 229 (1) (335 SE2d 445) (1985). We recently held that an intentional wrongful foreclosure can be the basis for an action for intentional infliction of emotional distress. See *Clark v. West*, 196 Ga. App. 456, 458 (395 SE2d 884) (1990). However, even giving appellant the benefit of all reasonable doubts and inferences, we cannot conclude that the trial court erred in granting summary judgment to appellees. The evidence viewed in a light most favorable to appellant shows that Hutton purchased the subject deed to secure debt during a bulk purchase of other similar instruments without checking the public records to determine whether the deed had been cancelled; that the debt to Atlantic was not paid by Robinson at the time that the deed was cancelled; that Robinson made several payments on the debt to Kislak even after the deed had been cancelled by Atlantic; that the Atlantic-Robinson quitclaim deed was not executed with the same formalities with which Byrne was familiar; and that while there is some evidence that Byrne may have known Westmoreland sometime prior to when the quitclaim deed was recorded, there is no evidence that Byrne recognized the signature on the quitclaim deed as being Westmoreland's or anyone else's from Atlantic. " 'The law will intervene only where the distress inflicted is so severe that no reasonable man could be expected to endure it. [Cit.] It is for the court to determine whether on the strength of the evidence *severe* emotional distress can be found. [Cit.]' [Cit.]" *Yarbray v. Southern Bell Tel. &c. Co.*, 197 Ga. App. 846, 851 (2) (399 SE2d 718) (1990). We find no error in the trial court's determination that the evidence did not as a matter of law make out a case of intentional infliction of emotional distress.

2. We next consider whether the trial court erred in granting JIK's motion for summary judgment on appellant's claim for abusive litigation. Appellant's claim for abusive litigation having been made before the effective date of OCGA § 51-7-80 et seq., we must analyze the claim under *Yost v. Torok*, 256 Ga. 92, 96 (13) (344 SE2d 414) (1986) which provides that "any party who shall bring or defend an action, or any part thereof, that lacks substantial justification, or is interposed for delay or harassment; or any party who unnecessarily expands the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures, shall be liable in tort to an opposing party who suffers damage thereby."

We reject at the onset appellees' argument that the denial of appellant's interlocutory injunction precludes his claim for abusive litigation. In support of their argument, appellees cite *Biosphere Indus. v. Oxford*, 190 Ga. App. 613 (379 SE2d 555) (1989), where we held

that rulings by the trial court in denying summary judgment and a directed verdict to the appellants in the underlying case "were equally sufficient to constitute 'a binding determination' that [appellees'] civil action against appellants did not lack substantial justification so as to render it frivolous, groundless or vexatious." Id. at 614-615. However, " '[t]he purpose for granting interlocutory injunctions is to preserve the status quo, as well as balance the conveniences of the parties, pending a final adjudication of the case.' [Cit.]" *Benton v. Patel*, 257 Ga. 669 (1) (362 SE2d 217) (1987). The trial court's order denying appellant's interlocutory injunction does not indicate that the merits of the underlying case were considered, therefore, we find no bar to appellant's *Yost* claim. See *Efstathiou v. Saunders*, 189 Ga. App. 470 (3) (376 SE2d 413) (1988).

(a) Appellant first contends that the attempted wrongful foreclosure constituted abusive litigation in that it lacked substantial justification. A foreclosure under a power of sale contained in a security deed is not a judicial proceeding and involves neither the use nor abuse of process. See *Sale City &c. v. Planters &c. Bank*, 107 Ga. App. 463, 464-465 (130 SE2d 518) (1963). Although appellant may have a cause of action in tort for attempted wrongful foreclosure (see *Sale City*, supra), we conclude that since the torts of malicious use and abuse of process are the predecessors of *Yost* claims (see generally *Yost v. Torok*, supra), appellant cannot state a cause of action for abusive litigation based on the attempted foreclosure pursuant to the power of sale contained in the Atlantic-Robinson security deed.

(b) Appellant next contends that JIK's filing of an affidavit of forgery on the day of the hearing on appellant's application for interlocutory injunction lacked substantial justification and constituted abusive litigation. In the affidavit, Byrne, a former employee of Atlantic, stated that he had at all times relevent been employed by one of the servicing agents for the mortgage and that he had access to the servicing records of Atlantic. Byrne pointed out several of the irregularities which existed on the face of the Atlantic-Robinson quitclaim deed and further stated that he did not recognize the signature on the Atlantic-Robinson quitclaim deed as being that of any officer or employee of Atlantic; that to the best of his knowledge Atlantic did not have a corporate vice-president whose signature even remotely resembled the signature on the deed; that it appeared to be someone with the initials "R. W."; that to the best of his knowledge Atlantic had no corporate vice-president with the initials "R. W."; and that he believed the Atlantic-Robinson quitclaim deed to be a forgery. Appellant contends that summary judgment was inappropriate because the deposition of Westmoreland, submitted by appellant, raised a question of fact as to whether the statements in the affidavit of forgery were false. Westmoreland testified in his deposition that he believed

that Byrne knew him while Westmoreland and Byrne were employed by Atlantic in 1984; that he could not specifically remember any direct contact with Byrne but is sure that he spoke on the telephone with Byrne about some matters; that after Westmoreland and Byrne left Atlantic, they had extensive business dealings with each other. We do not find that Westmoreland's testimony is sufficient to raise a question of fact as to whether JIK's filing of the affidavit of forgery lacked substantial justification. Specifically, the deposition testimony does not contradict Byrne's statement in the affidavit that he did not recognize the signature on the deed. Nor does Westmoreland's testimony show that any of Byrne's statements made "to the best of his knowledge" are false. In an affidavit based on the best of an affiant's knowledge and belief, " '[e]very (item set forth as a fact) in the (affidavit) may be false, and yet each one may be true to the best of the knowledge and belief of the affiant.' [Cit.]" *Morris-Bancroft Paper Co. v. Coleman*, 188 Ga. App. 809, 810 (374 SE2d 544) (1988). Considering the illegibility of the signature on the deed, the number of irregularities appearing on the face of the deed, as well as the indications as evidenced by the payment conduct of Robinson that the loan was not cancelled, we find no evidence that the attack on the validity of the deed by the filing of the affidavit of forgery lacked substantial justification.

(c) Finally, appellant contends that JIK's filing of false interrogatory answers constituted abusive litigation. The record reflects that JIK, in response to appellant's second interrogatories, answered that it was unaware of any present or past employee of JIK or Kislak with any knowledge about Westmoreland. The interrogatory answers were originally filed in March 1989 and were verified by one of Kislak's foreclosure managers. In September 1989, following the deposition of Westmoreland, the interrogatory answers were amended pursuant to OCGA § 9-11-26 (e) to provide appellant with the names and addresses of several individuals with knowledge about Westmoreland. Appellant has presented no evidence that the interrogatory answers were false when verified by JIK's foreclosure manager. JIK promptly utilized the available procedure for amending its answers to interrogatories. Accordingly, we conclude that the trial court did not err in granting summary judgment to JIK on appellant's claim of abusive litigation.

3. Lastly, we address appellant's contention that the trial court erred in granting summary judgment to the added defendants on his abusive litigation claim. Appellant argues that the added defendants are vicariously liable for the acts of its agent JIK. Inasmuch as we have found no liability for abusive litigation on the part of JIK, appellant's argument is without merit. See Division 2.

*Judgments affirmed. Banke, P. J., and Birdsong, P. J., concur.*

DECIDED MARCH 12, 1991 —
REHEARING DENIED MARCH 27, 1991 — ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Herald J. A. Alexander,* for appellant.
*Long, Aldridge & Norman, David J. Maslia, J. Allen Maines,* for appellees.