S91G0431. YARBRAY v. SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY.

(409 SE2d 835)

HUNT, Justice.

We granted certiorari to the Court of Appeals to review its affirmance of the trial court's grant of summary judgment to defendant Southern Bell Telephone & Telegraph Company on plaintiff Shirley Yarbray's claims of invasion of privacy and intentional infliction of emotional distress. Yarbray v. Southern Bell Tel. &c. Co., 197 Ga. App. 846 (399 SE2d 718) (1990). We affirm in part and reverse in part.

Shirley Yarbray worked in the personnel department at Southern Bell's headquarters, where she investigated employment discrimination claims and administered guidelines for the selection and promotion of management personnel. When she was passed over for a promotion to supervisor, she filed an employment discrimination suit against the company. While that case was pending, Yarbray was a witness in a similar suit filed by another Southern Bell employee who was represented by the same attorney. Yarbray was told by Southern

---

Bell's counsel before her testimony that he expected her to tell the truth and "he hoped that this would not affect [her] job. . . ."[1] After she testified, describing what she perceived as discrimination at the company, Southern Bell settled the other employee's suit. Soon after, Yarbray was transferred to another division. Southern Bell claims the reason for the transfer was to take advantage of her expertise in personnel matters and to enhance her career, as well as to resolve the conflict created by her working in the employment discrimination department while her own case was pending against the company. Yarbray viewed the transfer as a demotion to a meaningless position where she was underused, undervalued, and abused by her supervisor. She claims the company threatened that she would lose her job if she testified against the company, and, after she testified, retaliated by transferring her to an unsatisfactory employment situation. She contends these acts amount to an invasion of privacy and intentional infliction of emotional distress, for which she seeks damages.

The Court of Appeals held Yarbray's allegations were insufficient as a matter of law to sustain a claim under either theory of tort liability and affirmed the grant of summary judgment to Southern Bell. We affirm in part and reverse in part.

1. Yarbray contends the Court of Appeals erred by affirming the trial court's grant of summary judgment to Southern Bell on her invasion of privacy claim. Invasion of privacy was first recognized in this state in the landmark case of *Pavesich v. New England Life Ins. Co.,* 122 Ga. 190 (50 SE 68) (1904):

> The right of privacy is embraced within the absolute rights of personal security and personal liberty. Personal security includes the right to exist and the right to the enjoyment of life while existing, . . . Personal liberty includes not only freedom from physical restraint, but also the right "to be let alone," . . .

In *Cabaniss v. Hipsley,* 114 Ga. App. 367, 370 (151 SE2d 496) (1966), Judge Eberhardt adopted the analysis of the tort of "invasion of privacy" accepted by a number of legal scholars, dividing that right into:

> (1) [I]ntrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing

---

[1] He allegedly reminded her of her first duty — loyalty to Southern Bell. The Court of Appeals characterized his comments as follows:
> In context, these comments could easily be construed as a threat in order to coerce favorable testimony for Southern Bell. Even worse, the comments could be interpreted as and taken as an attempt to suborn perjury.

*Yarbray,* supra at 849.

facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; (4) appropriation for the defendant's advantage, of the plaintiff's name or likeness.[2]

Yarbray's allegations, if they state any claim under this theory, can fall only within the first category: the right to seclusion or solitude and the privacy of one's affairs.

The "unreasonable intrusion" aspect of the invasion of privacy involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns. Keeton, Prosser & Keeton on Torts, § 117 at pp. 855-856 (5th ed. 1984). See also Adams & Adams, Georgia Law of Torts (1989) § 29-3 at pp. 342-343. "[H]ighly personal questions or demands by a person in authority may be regarded as an intrusion on psychological solitude or integrity and hence an invasion of privacy." Keeton, Prosser & Keeton on Torts, supra at p. 121 (Supp. 1988). However, "[t]here are some shocks, inconveniences and annoyances which members of society in the nature of things must absorb without the right of redress." *Davis v. General Fin. &c. Corp.*, 80 Ga. App. 708, 711 (57 SE2d 225) (1950).

We agree with the trial court and the Court of Appeals that Yarbray's allegations do not constitute an unreasonable intrusion to support a claim of an invasion of privacy.[3] Yarbray contends she was entitled to testify in the trial of her peer without being influenced by the company. However, the company's interests were at stake and it was not unreasonable, nor was it an invasion of Yarbray's *privacy* to warn her of the company's concerns about her testimony.[4] Further, there is no way in which Yarbray's transfer (which the company had every right to do for any or no reason, absent discrimination prohibited by federal law) can be viewed as violative of her right of privacy.

---

[2] See also Prosser, Privacy, 48 Calif. L. Rev. 38 (1960); Keeton, Prosser & Keeton on Torts (5th ed. 1984) § 117 at pp. 851-866; Adams & Adams, Georgia Law of Torts (1989) § 29-3 at pp. 342-343; Restatement 2d of Torts, §§ 652A-652E (1977). Other noted scholars have criticized this classification as providing a misleading semblance of statutory precision. Harper, James & Gray, The Law of Torts (2d ed. 1986) § 9.6 at pp. 633-634, n. 3.

[3] Cases in which courts have held the conduct complained of sufficient to state a cause of action for this aspect of the tort of invasion of privacy are collected in *Cabaniss v. Hipsley*, 114 Ga. App., supra at 367, 372 and include unwarranted intrusion into a hotel room, a state room, or a home. Also, unauthorized surveillance, by means of eavesdropping, wiretapping, or otherwise, may constitute invasion of privacy. See Adams & Adams, supra, § 29-3 at p. 343. Cases in which courts have held the conduct complained of insufficient to reach the level of an actionable tort under this aspect of the invasion of privacy include threatening legal action in the good faith belief that a debt is owed, reasonable surveillance in connection with obtaining evidence to prosecute or defend a lawsuit, and surveillance in a department store's rest rooms in order to protect its patrons from crime. Id.

[4] Compare *Phillips v. Smalley Maintenance Services*, 435 S2d 705 (Ala. 1983) cited by Keeton in Prosser & Keeton on Torts, supra, involving sexual demands, as illustrative of the type of *personal* demand which might amount to an invasion of privacy.

Accordingly, the company's conduct was, as a matter of law, not an unreasonable intrusion which would support a claim for invasion of privacy, and the Court of Appeals did not err in affirming the trial court's grant of summary judgment on this issue.

2. However, we reach a different conclusion regarding Yarbray's action for intentional infliction of emotional distress. The Restatement 2d of Torts, § 46 (1) (1965) defines this tort as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

See also Georgia Law of Torts, supra, § 29-2 at p. 340; *Bridges v. Winn-Dixie Atlanta,* 176 Ga. App. 227, 229 (1) (335 SE2d 445) (1985).

The conduct complained of must have been extreme and outrageous to support a claim under this theory. See Comment d, § 46 (1) of the Restatement 2d of Torts ("Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim 'Outrageous!' "); see also *Gordon v. Frost,* 193 Ga. App. 517, 521 (388 SE2d 362) (1989). Also, the resulting emotional distress must be severe to impose liability for this tort. See Comment j, § 46 (1) of the Restatement 2d of Torts; *Bridges v. Winn-Dixie Atlanta,* supra at 230 (1).

Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law. *Gordon v. Frost,* supra at 521. If the evidence shows that reasonable persons might find the presence of extreme and outrageous conduct and resultingly severe emotional distress, the jury then must find the facts and make its own determination. Id.

The fact that Southern Bell deliberately set out to retaliate against her, and to punish her for ignoring its lawyer's admonitions and testifying against the employer, which retaliation included subjecting her to abuse by her supervisor and causing her severe emotional pain, if proved, would meet the threshold which reasonable persons would consider outrageous and extreme conduct and would be sufficient to subject the company to damages. Thus, if Yarbray supports these contentions, a jury issue is presented.

Accordingly, we reverse the Court of Appeals' holding affirming the trial court's grant of summary judgment to Southern Bell on Yarbray's cause of action for intentional infliction of emotional distress.

*Judgment affirmed in part; reversed in part. Clarke, C. J.,*

*Weltner and Benham, JJ., concur; Smith, P. J., dissents as to Division 1; Fletcher, J., and Judge William H. Craig dissent as to Division 2 and the judgment. Bell, J., disqualified.*

SMITH, Presiding Justice, dissenting.

Inasmuch as I think the company's conduct was an unreasonable intrusion of Ms. Yarbray's privacy that would support an invasion of privacy claim, I must dissent to Division 1 of the majority opinion.

I agree with Division 2 of the majority and the judgment.

FLETCHER, Justice, dissenting.

I would vacate certiorari as improvidently granted. This court's rules provide that certiorari will not be granted to review the sufficiency of the evidence. Ga. Sup. Ct. R. 30. The majority opinion does nothing more than review the evidence that both the trial court and Court of Appeals found insufficient to support Yarbray's claims.

Since the majority has chosen to ignore our rules and review the sufficiency of the evidence, I dissent to the holding that Yarbray's claim for intentional infliction of emotional distress survives summary judgment. The only conduct that could be labeled egregious is the company attorney's statement at a pretrial interview in another lawsuit that he hoped her trial testimony would not affect her job. Yet, as I understand the majority opinion, this statement is not part of Yarbray's claim for intentional infliction of emotional distress. Instead, the court finds that Yarbray's allegation that Southern Bell retaliated against her for testifying, a threat implied in its attorney's statement, meets "the threshold which reasonable persons would consider outrageous and extreme conduct."

I find that Yarbray does not allege company conduct that rises to the level of outrageous conduct. After Yarbray filed her lawsuit alleging age discrimination and misrepresented facts when testifying concerning the promotion of Southern Bell managers in a similar lawsuit, the company transferred her to a new division where her supervisor was critical. Her salary and benefits remained the same. Even assuming the company had an improper motive, her transfer to an equal-paying job in a less hospitable office does not "go beyond all possible bounds of decency." See Restatement 2d of Torts, § 46 (1), comment d. Because Yarbray has not met the stringent standard for sustaining a claim of intentional infliction of emotional distress, I agree with the Court of Appeals and would affirm on all issues.

DECIDED NOVEMBER 1, 1991 —
RECONSIDERATION DENIED NOVEMBER 27, 1991.

Ford & Haley, James L. Ford, for appellant.

Jones, Day, Reavis & Pogue, John F. Wymer III, Deborah A. Sudbury, for appellee.