A98A2143. TRONCALLI v. JONES.
(514 SE2d 478)

POPE, Presiding Judge.

Regina Jones sued Tom Troncalli. Her complaint set forth one count of stalking; a claim for intentional infliction of emotional distress; a claim for negligent infliction of emotional distress; a claim for invasion of privacy; and a claim for assault and battery. In addition to the claim for compensatory damages, the complaint sought punitive damages.

The case was tried to a jury; at the conclusion of the evidence, the trial court directed a verdict on the claim for negligent infliction of emotional distress. The jury then returned a general verdict in Jones' favor for $45,000 in compensatory damages; the jury also found that punitive damages were warranted by the evidence and that Troncalli had acted with specific intent to cause harm. The punitive damages portion of the trial was then held, and the jury awarded $245,891 in punitive damages. The trial court entered judgment, Troncalli appeals, and based on our conclusion in Division 1 that stalking is not a tort, we reverse the judgment.

Viewing the evidence in the light most favorable to the verdict, Jones and Troncalli, who previously had met briefly, were at a mutual friend's house for a business-related party on April 24, 1996. Troncalli approached Jones and talked with her. During the conversation he "brushed up" against Jones' breasts with his arm and then looked at her to acknowledge that he had intentionally touched her. Jones felt uncomfortable and went to a different room; Troncalli followed her. He then gave her his business card and again intentionally touched her breasts.

Because she felt uncomfortable at the party, Jones left the party and got in her car. She saw Troncalli leaving the party and quickly walking to his car. As Jones was driving away, she noticed in her rearview mirror that Troncalli was following her in his car. Because she was afraid, Jones ran a stop sign, and Troncalli also ran the stop sign. Jones recalled that Troncalli followed her car very closely and when she began speeding, he began speeding too. Jones drove through the parking lot of a convenience store to avoid stopping at a stop sign; Troncalli followed her through the lot.

After traveling about three miles, Jones saw two police cars parked in front of a gas station. She drove up to the police and told them she was being chased. Troncalli arrived in the parking lot about a half-minute after Jones arrived. The police officers, who testified at trial, stated that Jones appeared "extremely frightened" and upset; she told the officers about Troncalli's behavior. At this point, Troncalli motioned at Jones as if to cut his throat. Troncalli looked angry, and Jones understood the gesture as a threat. One of the officers confirmed that the gesture appeared threatening and recalled that after Troncalli gestured, Jones asked the officers to tell Troncalli to go away. The officers then asked Troncalli to leave the premises. After about five minutes, Jones left the parking area and went home.

Officer Gomez testified that he asked Jones if she wanted to file a report regarding Troncalli's stalking. Jones did not want to pursue the matter. Gomez recalled that about a week after the incident, Jones came to the police station and asked that an incident report be made. She was also interested in getting a warrant against Troncalli. Though no charges were filed against Troncalli, both the incident report and the warrant were introduced as exhibits.

The evening after the business party, Jones and Troncalli were both present at a Chamber of Commerce meeting. Jones testified that before she was aware that Troncalli was present, he walked up behind her, put his mouth on her neck, and told her she had better be careful, because someone might be watching her. Jones became very frightened and tried to get away from Troncalli, but he followed her. Jones told Troncalli that he was frightening her and asked him to leave her alone, but Troncalli laughed at her request. Jones left the meeting soon thereafter.

On or about May 2, 1996, a little more than a week after the first business meeting, Troncalli came to Jones' house and banged loudly on the door for about five minutes. Although Jones was not at home, her teenage daughter testified that she saw Troncalli and that her mother became more frightened after this incident.

After these incidents Jones developed shingles, experienced nausea and vomiting, became frightened and depressed, and sought psychological counseling.

At trial, Paula Head and Tamara Roberts testified that Troncalli had also subjected them to unwanted attention, touched their breasts intentionally and against their will, continued to pursue them after they asked him to stop, and otherwise behaved in a sexually inappropriate manner.

Troncalli testified at trial and claimed that Jones' account of the above incidents was erroneous.

1. In his first enumeration of error, Troncalli claims that the trial court erred in denying his motion for directed verdict on Jones' claim of stalking.[1] Troncalli argues that the court's holding that a tort of stalking was created when the legislature created a criminal statute on stalking was erroneous. Jones argues that the court did not err in denying the motion for directed verdict and that the court's charge on stalking simply set forth a duty which Troncalli breached. Jones claims that because there was a general verdict form the fact that stalking was included as an offense was, at most, harmless error.

The enactment of OCGA § 16-5-90, which defines the crime of stalking, did not automatically create a tort of stalking. It is well settled that "[t]he violation of a penal statute does not automatically give rise to a civil cause of action on the part of one who is injured thereby." (Punctuation omitted.) *Cechman v. Travis*, 202 Ga. App. 255, 256 (1) (414 SE2d 282) (1991).

In *Cechman*, the plaintiff argued that OCGA § 19-7-5, which requires doctors with reasonable grounds for believing that a child has been abused to report such abuse, created a private cause of action. This Court rejected the argument that the criminal statute created a private cause of action in favor of the victim. See also *Rolleston v. Huie*, 198 Ga. App. 49, 50 (2) (400 SE2d 349) (1990) (no tort remedy available under OCGA § 16-8-16 for the allegedly unlawful attempt to disseminate information tending to impair appellant's business); *Sparks v. Thurmond*, 171 Ga. App. 138, 142 (5) (319 SE2d 46) (1984) (plaintiff did not acquire private right of action pursuant to OCGA § 35-3-38, which renders the unauthorized procurement of Georgia Crime Information Center record information punishable).

Here, although OCGA § 16-5-90 establishes the public policy of the state, nothing in its provisions creates a private cause of action in tort in favor of the victim. We have been unable to locate any Georgia case which analyzes this issue. Though in *Aycock v. Calk*, 222 Ga. App. 763 (476 SE2d 274) (1996), the complaint and the counterclaim contained a claim for stalking, this Court did not address the legiti-

---

[1] Several months before trial, Troncalli filed a motion to dismiss for failure to state a claim in which he raised the same arguments regarding stalking which he raises here; the trial court denied the motion.

macy of those claims. Because there is no cause of action for stalking, the court should have granted Troncalli's motion for directed verdict on this basis.[2]

Jones' argument that there was no harmful error because the jury returned a general verdict lacks merit. In fact, the opposite of this is true: "[s]ince the jury found a general verdict for the plaintiff against [the] defendant[], the verdict cannot stand for the reason that this court cannot determine whether the verdict was entered upon a proper basis. [Cits.]" *Ga. Power Co. v. Busbin*, 242 Ga. 612, 616-617 (8) (250 SE2d 442) (1978).

Similarly, Jones' arguments that the jury was appropriately charged on stalking because the charge outlined Troncalli's duty and because all of the evidence regarding stalking would have been otherwise admissible under other theories are without merit. Stalking was one of Jones' main theories of recovery in the case; it formed a separate count of the complaint. Jones' opening statement listed stalking as the first theory of recovery. In its closing charge, the court gave the jury a lengthy charge regarding stalking, tracking the statutory definition which is set forth in OCGA § 16-5-90. Contrary to Jones' argument, the court did not instruct the jury that stalking simply defined a duty and Jones' argument that stalking was peripheral to her recovery is without merit.

Because Troncalli's additional enumerations involve issues which are likely to recur on retrial, we will also address these arguments.

2. In his second enumeration of error, Troncalli argues that the trial court erred in denying his motion for directed verdict on Jones' claim of invasion of privacy.

> Under Georgia case law, the concept of invasion of privacy encompasses four loosely related but distinct torts, as follows: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation for the defendant's advantage of the plaintiff's name and likeness. [Cit.]

---

[2] A brief overview of other states illustrates the different methods of handling civil actions for stalking. In California, Civil Code § 1708.7 specifically creates the tort of stalking. The tort arises after a defendant engages in a pattern of conduct "the intent of which was to follow, alarm, or harass the plaintiff." § 1708.7 (a) (1). In *Rumbauskas v. Cantor*, 649 A2d 853 (N. J. 1994), the court discussed stalking as constituting the "intrusion on seclusion" type of an invasion of privacy claim. See also *Kanzler v. Renner*, 937 P2d 1337, 1345 (Wyo. 1997) (Thomas, J., concurring specially), which recognizes the problems in carefully crafting the parameters of this potentially volatile tort.

*Sun v. Langston*, 170 Ga. App. 60, 61 (2) (316 SE2d 172) (1984). In this case, Jones was clearly proceeding under the first category, i.e., intrusion into her private affairs.

As described above, Troncalli intentionally brushed up against and intentionally touched Jones' breasts; he followed her in his car; he made a threatening gesture at her; he put his mouth on her neck; he followed her when she tried to get away; and he came to her house and knocked loudly on the door. All of these actions by Troncalli were "unwanted, uninvited, and unwarranted intrusions upon the plaintiff's seclusion and solitude," in the words of her complaint. This type of invasion of privacy was characterized in *Cabaniss v. Hipsley*, 114 Ga. App. 367, 371 (1) (151 SE2d 496) (1966), as "[i]ntrusion upon the plaintiff's seclusion or solitude, or into his private affairs."

In *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 704 (409 SE2d 835) (1991), our Supreme Court pointed out that "[t]he 'unreasonable intrusion' aspect of the invasion of privacy involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns." (Citations omitted.) Id. at 705. In *Yarbray*, the Court recognized that even " '[h]ighly personal questions or demands by a person in authority may be regarded as an intrusion on psychological solitude or integrity and hence an invasion of privacy.' " (Citation omitted.) Id. at 705.

In this case, there was no error in the trial court's denial of Troncalli's motion for directed verdict on this claim, in light of the evidence of Troncalli's behavior. There was evidence that Troncalli's actions constituted an invasion of Jones' privacy, in that the actions were an unreasonable, offensive intrusion into her seclusion and solitude.[3]

3. Troncalli contends that the trial court erred in denying his motion for directed verdict on Jones' claim of intentional infliction of emotional distress. He argues that his actions did not rise to the level of egregiousness necessary to maintain a claim of this nature. We do not agree.

"A plaintiff must prove the following elements in order to recover for intentional infliction of emotional distress: (1) intentional or reckless conduct (2) which is extreme and outrageous and (3) caused the emotional distress (4) which is severe." *Trimble v. Circuit City Stores*, 220 Ga. App. 498, 499 (469 SE2d 776) (1996).

---

[3] Because of the physical nature of some of Troncalli's intrusions, we are not presented here with the issue illustrated by *Kobeck v. Nabisco, Inc.*, 166 Ga. App. 652, 654 (2) (305 SE2d 183) (1983), in which this Court stated that in order to proceed under the theory of intrusion into plaintiff's solitude, Georgia law requires that the intrusion be "*physical*, analogous to a trespass." (Punctuation omitted; emphasis in original.) Id.

Although the existence of a special relationship in which one person has control over another, such as the employer-employee relationship, may produce the requisite outrageousness, the existence of the employer/employee relationship is not dispositive.

Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law. If the evidence shows that reasonable persons might find the presence of extreme and outrageous conduct and resulting severe emotional distress, the jury then must find the facts and make its own determination. To support the emotional distress allegation . . . [the] conduct must have been so abusive or obscene as naturally to humiliate, embarrass, frighten, or extremely outrage [Jones].

(Citations and punctuation omitted.) *Mears v. Gulfstream Aerospace Corp.*, 225 Ga. App. 636, 640 (2) (b) (484 SE2d 659) (1997). Nevertheless, "[m]ere tasteless, rude or insulting social conduct will not give rise to such a claim." Id. at 641. Here, we conclude that the evidence was sufficient to survive the motion for directed verdict, because a jury could reasonably find that Troncalli's conduct towards Jones was outrageous and extreme, rather than merely rude or insulting. Compare *Hendrix v. Phillips*, 207 Ga. App. 394, 395 (1) (428 SE2d 91) (1993) (no prima facie case of intentional infliction of emotional distress where conduct was simply tasteless and rude). Jones' severe emotional distress was the natural by-product of his actions. See generally *Sevcech v. Ingles Markets*, 222 Ga. App. 221, 223 (3) (474 SE2d 4) (1996).

4. Finally, Troncalli argues that the trial court erred in denying his motion in limine regarding prior similar acts. Specifically, Troncalli argues that testimony from Paula Head and Tamara Roberts was improperly admitted at trial. Although Troncalli preserved his argument regarding Head's testimony, he waived his argument regarding Roberts' testimony.[4] Because he waived any argument regarding Roberts' testimony, we will address his argument only with respect to Head's testimony.

Before trial, the court held a hearing on Troncalli's motion and concluded that Troncalli's acts toward Head were sufficiently similar to those against Jones to show a bent of mind or course of conduct. At trial, Head testified that in November 1995, Troncalli began behaving toward her in a sexually inappropriate manner. She stated that

[4] Troncalli did not argue that Roberts' testimony should be excluded in his motion in limine, nor did he raise this argument at trial.

Troncalli asked her to let him see between her legs; that he touched her breasts without her consent; that he made unwelcome advances; and that she filed a lawsuit against him.

Troncalli argues that this evidence was unduly prejudicial and improperly bolstered Jones' case for punitive damages. "The admission or exclusion of evidence on the ground of relevance lies within the sound discretion of the trial court. [Cit.]" *Whorton v. Boatwright*, 233 Ga. App. 369, 370 (504 SE2d 216) (1998). In this case we find no abuse of the trial court's discretion.

"The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." OCGA § 24-2-2. "However, such testimony may be admitted if relevant to an issue in the case and if the evidence does not place too great a danger of undue consumption of time, confusion of issues, undue prejudice or unfair surprise. [Cits.]" (Punctuation omitted.) *Dimarco's, Inc. v. Neidlinger*, 207 Ga. App. 526, 527 (1) (428 SE2d 431) (1993). For instance, "[i]n cases involving the intentional torts of assault and battery, evidence of prior violent or peaceable conduct by a party has been held to be admissible when relevant to an issue in the case." Id. Furthermore,

> [s]imilar acts are admissible in evidence, if committed or proposed at or about the same time, and when the same motive may reasonably be supposed to exist, with a view to establish the intent of the defendant in respect to the matters charged against him in the complaint. Intent, good faith, motive, and other such matters relating to the state of a person's mind are usually not easily susceptible of direct proof. But frequently the state of mind accompanying the doing of an act is illustrated by other acts of a similar nature, done or proposed by the defendant in such a way as to indicate a general practice or course of conduct, or as to display motive, knowledge, intent, good faith, bad faith, and a variety of other such things.

(Citations and punctuation omitted.) *John W. Rooker & Assoc. v. Wilen Mfg. Co.*, 211 Ga. App. 519, 520 (439 SE2d 740) (1993). In this case, there was no error in the trial court's denial of the motion in limine because the evidence was admissible to show intent, motive and bent of mind.

For this reason, we also reject Troncalli's argument that this evidence improperly bolstered Jones' claim for punitive damages. In *Webster v. Boyett*, 269 Ga. 191, 195 (1) (496 SE2d 459) (1998), our

Supreme Court examined the propriety of the trial court's prohibition of evidence of the defendant's prior DUI conviction during the liability phase of a personal injury trial in which the plaintiff sought punitive damages. The question in *Webster* was whether the evidence of the similar acts was relevant in determining liability for punitive damages and, if so, the proper procedure to be followed in handling the admission of the evidence.

The Supreme Court recognized the potentially prejudicial effect that evidence of prior acts could have on a jury during the liability portion of the trial, but declined to enunciate a bright-line rule. Instead the Supreme Court concluded:

> the best way to guarantee a fair trial and ensure judicial economy is to continue to give the trial judge discretion on when to admit the evidence of prior and subsequent acts. The general rule is that trial judges may exercise discretion in excluding relevant evidence if its probative value is substantially outweighed by the risk that its admission will confuse the issue, mislead the jury, or create substantial danger of undue prejudice. In making their decision, trial courts should consider the potential prejudice to the parties, the complexity of issues and the potential for jury confusion, and the relative convenience, economy, or delay that may result.

(Footnotes omitted.) *Webster v. Boyett*, 269 Ga. at 195.

Here, Jones' case was based on allegations that Troncalli's acts were intentional. Particularly in light of Troncalli's denial of Jones' account of his actions, the prior acts were relevant to establish bent of mind and course of conduct. In addition, this evidence was relevant to establish liability for punitive damages in the first phase of the trial. Accordingly, the trial court did not abuse its discretion in allowing the evidence.

*Judgment reversed. Beasley, P. J., and Ruffin, J., concur.*

DECIDED MARCH 15, 1999.

*Bach, Hulsey & Carver, John C. Bach, Robert J. Hulsey*, for appellant.

*Gray & Gilliland, David S. Currie*, for appellee.